UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

HIGHLAND CAPITAL MANAGEMENT,
L.P.,

     Plaintiff,

          - against -

LEONARD SCHNEIDER, LESLIE
SCHNEIDER, SCOTT SCHNEIDER, and
SUSAN SCHNEIDER

     Defendants.

LEONARD SCHNEIDER, LESLIE
SCHNEIDER, SCOTT SCHNEIDER, and
SUSAN SCHNEIDER,

     Third-Party Plaintiffs,

          - against -

RBC CAPITAL MARKETS CORPORATION
f/k/a/ RBC DOMINION SECURITIES
CORPORATION,

     Third-Party Defendant and
     Third-Party Counterclaimant.

**OPINION AND ORDER**

02 Civ. 8098  (PKL)

**Appearances**

LACKEY HERSHMAN, L.L.P.
Paul B. Lackey, Esq.
Jamie R. Welton, Esq.
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219

Attorneys for Plaintiff

TROUTMAN SANDERS L.L.P.
Alvin M. Stein, Esq.
Katherine C. Ash, Esq.
405 Lexington Avenue
New York, New York 10174

Attorneys for Defendants/Third-Party Plaintiffs

SEWARD & KISSEL L.L.P.
Jack Yoskowitz, Esq.
Michael J. McNamara, Esq.
One Battery Park Plaza
New York, New York 10004

Attorneys for Third-Party Defendant/Third-Party Counterclaimant

**LEISURE, District Judge:**

Plaintiff Highland Capital Management, L.P. ("Highland") brings this action to recover in contract from the defendants, Leonard Schneider, Leslie Schneider, Scott Schneider, and Susan Schneider (collectively, "the Schneiders") for their refusal to sell certain promissory notes, valued at $69 million, to Highland and third-party defendant and counterclaimant, RBC Capital Markets Corporation, formerly known as RBC Dominion Securities Corporation ("RBC"). Now on remand from the Second Circuit Court of Appeals, both the Schneiders and Highland have submitted supplemental memoranda of law regarding whether this Court should grant summary judgment to dismiss two of Highland's three remaining causes of action. Additionally before the Court are motions for summary judgment filed by RBC and the Schneiders to dismiss all third-party claims and counterclaims, respectively. For the reasons set forth below, the Schneiders' motion for summary judgment is GRANTED as to Counts One and Two of Highland's Complaint. Further, RBC's summary judgment motion to dismiss the Schneiders' third-party complaint is GRANTED and the Schneiders' summary judgment motion to dismiss RBC's third-party counterclaims is GRANTED IN PART and DENIED IN PART.

## Background

I.  Facts

The underlying facts of this dispute have been laid out in great detail by this Court, see Highland Capital Mgmt., L.P. v. Schneider, No. 02-8098, 2005 U.S. Dist. LEXIS 14912, at *8-28 (S.D.N.Y. July 26, 2005), the Second Circuit, Highland Capital Mgmt., L.P. v. Schneider, 460 F.3d 308, 310-12 (2d Cir. 2006), and the New York Court of Appeals. Highland Capital Mgmt., L.P. v. Schneider, 8 N.Y.3d 406, 408-10, 866 N.E.2d 1020, 1021-23 (2007). The Court assumes familiarity with each of these decisions and only provides a brief summary of the facts.

On April 15, 1998, the Schneiders sold their businesses, Jeri-Jo Knitwear, Inc. and Jamie Scott, Inc. ("Jeri-Jo"), to the McNaughton Apparel Group, Inc., formerly known as Norton McNaughton, Inc. ("McNaughton"). McNaughton paid $55 million, assumed $10.9 million in Jeri-Jo debt, and promised to pay an earn-out payment based upon Jeri-Jo's profits through June 30, 2000. After this period, McNaughton owed the Schneiders approximately $190 million in earn-out profits. Because of McNaughton's poor financial condition at the time these payments came due, it could not pay the Schneiders in cash and stock as originally promised. Instead, the parties amended the purchase agreement in August 2000 and agreed that part of the payment would be issued in the form of promissory notes. The amendments fixed the earn-out at $161 million in the following combination:

2

(1) $95 million in cash upfront; (2) $30 million in cash by November 30, 2000, after McNaughton received new financing; (3) $26 million in McNaughton common stock; and (4) $10 million in four three-year promissory notes. McNaughton was unable to make the $30 million cash payment by the November 30 deadline. In lieu of this payment, the Schneiders accepted four additional promissory notes with a total face value of $59 million. Altogether, the Schneiders received eight promissory notes with a total face value of $69 million, each payable to the individual Schneider to whom the money was owed.

In late 2000, the Schneiders engaged Glen Rauch, a broker-dealer acting through his company, Glen Rauch Securities, Inc. ("Rauch"), to price the notes. On January 8, 2001, Rauch entered into an agreement with RBC whereby RBC would act as an exclusive broker for the purpose of marketing the notes to third parties (the "Letter Agreement").[1] RBC's role was that of a "riskless principal," whereby it would purchase the notes from the Schneiders (through Rauch) and then "flip" the notes by selling them to a third-party purchaser at a premium. RBC found an end-purchaser for the notes, Highland, and RBC and Rauch began to negotiate the price. Highland and RBC allege that on March 14, 2001, Rauch orally agreed on behalf of the Schneiders

---

[1] The Letter Agreement states, in part, that "the consummation of any transaction remains in the sole discretion and satisfaction of the holders and [RBC], including without limitation with respect to price."

to sell \$45.4 million in notes[2] for 51 cents on the dollar to RBC, who in turn would flip the notes to Highland for 52.5 cents on the dollar. Highland and RBC contend that, despite this agreement, the Schneiders ultimately refused to settle the trade with Highland after learning from their attorneys at Jenkens & Gilchrist Parker Chapin L.L.P. ("JGPC") that McNaughton would be acquired by another company and the notes most likely would be paid in full.[3]

## II. Procedural History

Highland initiated this action in Texas State Court on October 18, 2001 against both the Schneiders and RBC. Highland and RBC eventually came to an agreement whereby Highland would amend the complaint and drop RBC as a defendant. Consequently, the case was removed to the United States District Court for the Northern District of Texas based upon diversity of citizenship, 28 U.S.C. § 1332(a), and was soon thereafter transferred to this Court. In its third-amended complaint ("Complaint"), the operative pleading here, Highland asserts seven claims for relief: (1) the Schneiders' breach of the oral contract to sell the notes to Highland; (2) the Schneiders' breach of the binding

---

[2]  This amount represents seven out of eight of the notes. Fidelity Management and Research Company ("Fidelity"), an unrelated company, was to purchase the remaining note. RBC has received an assignment of Fidelity's potential claims. (RBC's 56.1 ¶ 115.)

[3]  Indeed, the notes were paid out in full on June 19, 2001. The Schneiders received the entire \$69 million plus interest, instead of the \$35.2 million they would have received from the purported deal with Highland and Fidelity.

4

preliminary agreement to sell the notes to Highland; (3) the Schneiders' tortious interference with contractual relations between Highland and RBC; (4) the Schneiders' tortious interference with prospective contractual and business relations between Highland and RBC; (5) JGCP's tortious interference with contractual relations; (6) JGCP's tortious interference with prospective contractual and business relations; and (7) the Schneiders' breach of the oral contract to sell the notes to RBC, with Highland acting as a third-party beneficiary.

At the close of discovery, the Schneiders moved for summary judgment and judgment on the pleadings to dismiss all of Highland's claims. Counts One through Six of Highland's complaint were dismissed on the merits and Count Seven was dismissed for lack of subject matter jurisdiction.[4] Critical to the Court's analysis of Highland's contract claims (Counts One, Two, and Seven of the Complaint) was whether the promissory notes at issue were considered securities as defined by the New York Uniform Commercial Code § 8-102(a)(15). This Court

---

[4] The Court dismissed the four claims sounding in tort law -- Counts Three through Six of the Complaint -- because no genuine issue of material fact existed under New York law for tortious interference with contract or tortious interference with prospective business relationship. See Highland Capital Mgmt., 2005 U.S. Dist. LEXIS 14912, at *70-76. By summary order, the Second Circuit found that summary judgment was properly granted with respect to Counts Three and Four, the tort claims against the Schneiders. Highland Capital Mgmt., L.P. v. Schneider, 198 Fed. Appx. 41, 45-46 (2d Cir. 2006). Judgment as to Counts 5 and 6, the tort claims against JGPC, was vacated because JGPC destroyed diversity jurisdiction and this Court thus lacked the authority to resolve Highland's claims against JGPC. Id. at 43-44. The Second Circuit granted the Schneiders' motion to sever Highland's claims against JGPC, thereby dismissing JGPC from this action and enabling complete diversity. Id. at 45.

5

determined that the promissory notes were not securities, impacting the remainder of decision in two ways. First, Highland's contract claims were analyzed purely under common law principles of agency. Highland Capital Mgmt., 2005 U.S. Dist. LEXIS 14912, at *58-66. The Court concluded that because there was no privity of contract between Highland and the Schneiders, there could be no breach of contract or breach of a binding preliminary agreement between the two parties. Accordingly, Counts One and Two of the Complaint were dismissed on the merits. Second, the purported oral contract fell within New York's Statute of Frauds, limiting recovery on all claims relying on the validity of the oral contract up to $5,000. Highland's only claim that raised a genuine issue of material fact was the Schneiders' breach of the oral contract to sell the notes to RBC, with Highland acting as a third-party beneficiary (Count Seven of the Complaint). Because this claim would only be enforceable up to $5,000, the Court *sua sponte* dismissed the action for lack of subject matter jurisdiction under 28 U.S.C. § 1332(a).[5] Id. at *76-77.

---

[5] With Highland's Complaint fully dismissed, this Court refused to exercise supplemental jurisdiction, 28 U.S.C. § 1367(a), over the Schneiders' third-party complaint and over RBC's counterclaims. Highland Capital Mgmt., 2005 U.S. Dist. LEXIS 14912, at *77-78. Following the Second Circuit's remand, this Court will now rule on the respective motions filed by the Schneiders and RBC. See infra at 13-26.

6

Highland appealed, and on August 15, 2006, the Second Circuit certified the following question to the New York Court of Appeals:

> Based on this record, do the eight promissory notes issued by McNaughton Apparel Group, Inc., to the Schneiders fall within the definition of a 'security' as contemplated by Section 8-102(a)(15) of the New York Uniform Commercial Code?

Highland Capital Mgmt., 460 F.3d at 322. The New York Court of Appeals answered this question in the affirmative, concluding that the promissory notes fulfilled the requirements set forth in § 8-102(a)(15). See Highland Capital Mgmt., 8 N.Y.3d at 412-16, 866 N.E.2d at 1024-27. Consequently, the Second Circuit vacated and remanded this Court's judgment with respect to Counts One, Two, and Seven. As to Counts One and Two, this Court was instructed to reconsider them under the framework of Article 8 of the New York Uniform Commercial Code.[6] Notably, the Second Circuit stated:

> Applying common law principles of agency, the District Court concluded that there was no privity of contract between Highland and the Schneiders. By remanding for reconsideration, the Court is not dictating a different outcome, as the District Court might conclude that, notwithstanding Article 8 of the N.Y. U.C.C., the same common law principles yield the same result. The N.Y. U.C.C. does not completely supplant the

---

[6] As to Count Seven, third-party beneficiary breach of contract, the Second Circuit reversed this Court's jurisdictional dismissal because the statute of frauds was deemed inapplicable. Because this Court originally found that a genuine issue of material fact exists as to whether Highland was an intended third-party beneficiary of the purported contract between the Schneiders and RBC, Highland Capital Mgmt., 2005 U.S. Dist. LEXIS 14912, at *66-69, this claim survives summary judgment and will be decided by a jury at trial.

> common law. . . . The extent to which the
> analysis differs under the N.Y. U.C.C. is
> for the District Court to decide in the
> first instance.

Highland Capital Mgmt., L.P. v. Schneider, 485 F.3d 690, 693 n.4

(2d Cir. 2007). With these instructions in mind, the Court now

undertakes to decide whether summary judgment is still warranted

as to Counts One and Two of Highland's Complaint.[7] The Court

will then decide the motions for summary judgment between RBC

and the Schneiders. Familiarity with the summary judgment

standard is assumed. See Highland Capital Mgmt., 2005 U.S. Dist.

LEXIS 14912, at *29-31.

## Discussion

### I.  Counts One and Two of Highland's Complaint

The issue presented on remand is relatively narrow. Having

already determined under common law principles of agency "that

there is no evidence supporting plaintiff's theory that RBC

acted as an agent with the authority to bind the Schneiders to a

contract with Highland," id. at *58, the Court need only

determine whether that result would differ under the framework

of Article 8 of the U.C.C. See McNally Wellman Co. v. N.Y. State

Elec. & Gas Corp., 63 F.3d 1188, 1196 (2d Cir. 1995) ("New York

---

[7] Highland infers some significance in the Second Circuit's remand of this judgment for reconsideration when it simply could have affirmed summary judgment had it believed the result under Article 8 to be the same. This Court need not speculate on the intentions of the Second Circuit because its instructions were extremely clear: "By remanding for reconsideration, the Court is not dictating a different outcome . . . The extent to which the analysis differs under the N.Y. U.C.C. is *for the District Court to decide in the first instance.*" Highland Capital Mgmt., 485 F.3d at 693 n.4 (emphasis added).

8

courts have held specifically that the UCC displaces the common law when the particular section at issue produces a result that would be contrary to that obtained under ordinary contract law.") (citing Horn Waterproofing Corp. v. Bushwick Iron & Steel Co., 66 N.Y.2d 321, 327, 488 N.E.2d 56, 60 (1985)); U.S. Small Bus. Admin. v. Citibank, N.A., No. 94 Civ. 4259, 1997 U.S. Dist. LEXIS 1080, at *14 (Leisure, J.) ("The NYUCC displaces certain common law causes of action. However, 'unless displaced by the particular provisions of this Act, the principles of law and equity . . . shall supplement its provisions.' Further, general principles of statutory construction indicate that specific, clear legislative intent is required in order to displace existing common law.") (quoting N.Y. U.C.C. § 1-103 (McKinney 1993)). While it is possible for a specific Article 8 provision to supplant common law, see, e.g., S.E.C. v. Credit Bancorp, Ltd., No. 99-11395, 2000 U.S. Dist. LEXIS 17171, at *75-81 (S.D.N.Y. Nov. 29, 2000) (Sweet, J.) (finding that Part 5 of Article 8 supplanted the common law of bailment because "the U.C.C. states specifically that an entitlement holder's property rights over assets held by its securities intermediary are defined by the U.C.C. and not by the common law, and specific U.C.C. provisions are identified as the 'only' mechanism for enforcing those rights . . . ."), Article 8 generally "is not a comprehensive statement of the law governing the relationship between broker-dealers or other law securities intermediaries and

9

their customers. Most of the law governing that relationship is the common law of contract and agency, supplemented or supplanted by regulatory law." N.Y. U.C.C. § 8-509 cmt.

Highland argues that Article 8 should be interpreted liberally and flexibly in order to facilitate uniformity with the customs and usage of the securities industry. See N.Y. U.C.C. § 1-102. Because the securities industry treats "riskless principal" transactions as agency trades, Highland asks the Court to do the same and conclude that there is contractual privity between Highland and the Schneiders. Despite now making this request under the guise of Article 8, Highland's argument is no different than it was in its first opposition to summary judgment. Indeed, Highland is once again unable to point to any securities regulations that vest a "riskless principal" with authority to bind the seller in its first transaction to a contract with the buyer in its second transaction. As such, the Court relies on the analysis in its initial summary judgment opinion:

> Nor is plaintiff's argument that a 'riskless principal' is equal to an agent tenable. In support of this argument, plaintiff cites law review and other trade journal articles which analogize the riskless principal relationship to that of an agent as the riskless principal also 'assumes no market risk' in the transaction between the seller, here the Schneiders, and the secondary buyer, here Highland. An analogy is not a legal equivalent, however, and RBC's ability to hold Highland to an assumed firm bid to buy had Highland reneged does not create a

10

> contract between Highland and the
> Schneiders.

Highland Capital Mgmt., 2005 U.S. Dist. LEXIS 14912, at *62-63.

Highland likely avoids specific analysis of Article 8 of the U.C.C. -- the very purpose of the Second Circuit's remand -- because no provision therein displaces the Court's prior common law analysis. If such a provision existed, it would almost certainly be found in Part 3 of Article 8,[8] which describes "how interests in securities are acquired in a direct holding system."[9] N.Y. U.C.C. § 8-104 cmt.

A review of each section in Part 3 reveals that the U.C.C. does not displace the common law of agency. Section 8-301 describes when delivery of a security to a purchaser occurs. See N.Y. U.C.C. § 8-301 cmt. ("Delivery is used in Article 8 to describe the formal steps necessary for a purchaser to acquire a direct interest in a security under this Article. The concept of delivery refers to the *implementation* of a transaction, *not the legal categorization* of the transaction which is consummated by delivery.") (emphasis added). Next, § 8-302 explains the

---

[8] Part 1 provides general definitions; Parts 2 and 4 relate to issuers and the registration of securities; Part 5, as described in Footnote 9, is inapplicable to the Schneiders' securities.

[9] "The customer can be a direct holder only if the security certificate, or other financial asset, is registered in the name of, payable to the order of, or specially indorsed to the customer, and has not been indorsed by the customer to the securities intermediary or in blank." N.Y. U.C.C. § 8-501 cmt. An indirect holding system, on the other hand, consists of individuals "who hold securities through brokers or custodians," which are "security entitlements that are governed by Part 5 . . . ." Id. Here, it is undisputed that each promissory note was payable to the order of the individual Schneider to whom it was issued and that no note was ever indorsed to a securities intermediary or in blank. Accordingly, the Schneiders were direct holders and the provisions of Part 3 apply.

11

rights of a purchaser who acquires a security and § 8-303 defines a "protected purchaser" as one who acquires a security free of any adverse claim. The Court agrees with the Schneiders' assertion that these sections "do not address the logically prior issue of whether any enforceable agreement was made between two parties for the purchase of the security." (Defs.' Supp. Memo of Law at 10.) Similarly, §§ 8-304 and 8-306, which specify the process and function of indorsement and the effect of an indorser guaranteeing the signature, respectively, are not pertinent here because the Schneiders' notes were never indorsed.[10] Section 8-305, titled "Instruction", is inapplicable because it pertains to uncertificated securities. See Highland Capital Mgmt., 8 N.Y.3d at 413, 866 N.E.2d at 1025 (classifying the Schneiders' promissory notes as certificated securities). Finally, § 8-307 states that "the transferor of a security on due demand shall supply the purchaser with proof of authority to transfer or with any other requisite necessary to obtain registration of the transfer of the security." N.Y. U.C.C. § 8-307. Like the other provisions of Part 3, this Section does not substantively

___

[10] Assuming, *arguendo,* that RBC had indorsed the Schneiders' notes and the issue before the Court was whether RBC had the authority to do so, § 8-107 dictates that the Court would analyze the situation under the common law of agency. See N.Y. U.C.C. § 8-107(b)(2) (providing that an indorsement is effective if "it is made by a person who has power under the law of agency to transfer the security or financial asset on behalf of the appropriate person"). Thus, in this context, Article 8 buttresses, rather than displaces, the common law of agency.

12

address principles of agency; it merely dictates a procedural prerequisite to a security transfer.

The procedural nature of Part 3 demonstrates that Article 8 does not displace the substantive common law principles originally relied upon by this Court. If Highland's request -- to follow the framework of the N.Y. U.C.C. instead of the common law -- was accepted, this Court would be left with no guidance with respect to whether RBC had the authority to bind the Schneiders to a contract with Highland. Accordingly, RBC's authority must be analyzed under common law, yielding the same result as in the Court's first opinion; because RBC could not act on behalf of the Schneiders, no privity of contract could exist between the Schneiders and Highland. Counts One and Two of Highland's Complaint are therefore dismissed.

## II. The Schneiders' Third-Party Complaint

On October 29, 2004, the Schneiders filed a third-party complaint against RBC, alleging that: (1) RBC, if it was determined to be an agent or broker for the Schneiders, breached its duty by exceeding its authority to bind its principal; (2) if there was a binding agreement or binding preliminary agreement between any of the Schneiders and Highland, then such agreement was caused by RBC's breach of the Letter Agreement; (3) if there was a binding agreement or binding preliminary agreement between any of the Schneiders and Highland, then such agreement was caused by RBC's breach of the implied covenant of

13

good faith and fair dealing; and (4) if judgment is awarded to Highland, or Highland was led to believe that it had a binding agreement or binding preliminary agreement to purchase the Notes, then RBC was negligent in performing its duties as a registered broker-dealer. The Schneiders seek indemnification, or alternatively, contribution, if they are found liable to Highland for RBC's actions. Before the Court is RBC's motion for summary judgment to dismiss the Schneiders' third-party claims.

As a threshold matter, the Schneiders' first, second, and third claims against RBC must be dismissed as moot. The first claim -- premised on a finding that RBC was the Schneiders' agent -- cannot stand because this Court has reaffirmed its finding that, as a matter of law, RBC was not an agent to the Schneiders. Additionally, the second and third claims are premised on a finding that the Schneiders entered into binding agreement or binding preliminary agreement with Highland. Because this Court has once again found that there is no privity between the Schneiders and Highland, the Schneiders cannot recover from RBC for causing the Schneiders "to be bound to an agreement to sell some or all of their Notes without RBC's having obtained the Schneiders' consent to or approval of any such transaction . . . ." (Defs.' Ans. & Third Am. Compl. ¶ 114.)

14

The viability of the Schneiders' remaining third-party claim for negligence depends upon whether indemnification or contribution from RBC is possible.

a. Implied Indemnification

Under New York law, indemnity arises out of a contract, either expressly or impliedly, in order "to prevent a result which is regarded as unjust or unsatisfactory." Rosado v. Proctor & Schwartz, Inc., 66 N.Y.2d 21, 24, 484 N.E.2d 1354, 1356 (1985). The Schneiders rely upon implied indemnity, alleging that if any "transaction is deemed to be binding on the Schneiders, then it was due solely to RBC's negligence or other wrongful conduct and the Schneiders are not independently liable." (Defs.' Opp. to RBC at 4.) Implied indemnity "is a restitution concept which results in a shifting of the loss 'because to fail to do so would result in the unjust enrichment of one party at the expense of the other.'" Facilities Dev. Corp. v. Miletta, 180 A.D.2d 97, 104, 584 N.Y.S. 2d 491, 495 (3d Dep't 1992) (quoting Mas v. Two Bridges Assoc., 75 N.Y.2d 680, 690, 554 N.E.2d 1257, 1262 (1990)). The Second Circuit has determined that an implied right to indemnification may be:  (1) implied in fact, based on the "special nature of a contractual relationship between the parties"; or (2) implied in law, based on "a great disparity in the fault of two tortfeasors, and one of the tortfeasors has paid for a loss that was primarily the

15

responsibility of the other." People's Democratic Republic of
Yemen v. Goodpasture, Inc., 782 F.2d 346, 351 (2d Cir. 1986).

"The burden of establishing an implied [in fact] agreement
to indemnify is a heavy one, especially in business
relationships where parties are free to negotiate for express
indemnification clauses." City of New York v. Black & Veatch,
No. 95 Civ. 1299, 1997 U.S. Dist. LEXIS 15510, at *31-32
(S.D.N.Y. Oct. 6, 1997) (Preska, J.). Here, there is nothing
special about the Letter Agreement between the Schneiders and
RBC that would warrant implied-in-fact indemnification. See
People's Democratic Republic of Yemen, 782 F.2d at 351 ("[T]here
is nothing special about the contractual relationship between
Goodpasture and Yemen that would warrant implying in fact a
contract for indemnification. . . . If an implied contract for
indemnification were to be found here, one would have to be
found in nearly every commodities sale contract that lacked a
clause excluding it, a result that would reverse all standard
contract and indemnity law.").

Fatal to the Schneiders' implied-in-law indemnification
claim is that the underlying claim by Highland sounds in
contract, and not tort. Highland seeks to hold the Schneiders,
not RBC, liable for breach of a third-party beneficiary
contract. If Highland is successful, no matter what duties RBC

16

may have owed to the Schneiders,[11] the jury will have necessarily found that the Schneiders were at fault. As this Court has noted in the past:

> In a case of implied indemnity, . . . 'where the party seeking indemnification is himself at least partially at fault, indemnity will not be implied.' Because the underlying action sounds in contract, not in tort, there is no possible set of facts on which it can be true that [third-party plaintiff] was not at least partially responsible for harm, for it was [third-party plaintiff] that allegedly breached the contract, not [third-party defendant]. There can therefore be no cause of action in indemnity.

Knight v. H.E. Yerkes & Assocs., Inc., 675 F. Supp. 139, 143 (S.D.N.Y. 1987) (Leisure, J.) (internal citations omitted); see Commonwealth Ins. Co. v. Thomas A. Green & Co., Inc., 709 F. Supp. 86, 89 (S.D.N.Y. 1989) (Sweet, J.) (finding that because the third-party plaintiff was sued for its own breach of contract, and not for the actions of the third-party defendants, it was precluded from bringing a common law indemnification claim); Facilities Dev. Corp., 180 A.D.2d at 104, 584 N.Y.S.2d at 496 (determining that even if third-party defendant "caused

---

[11] The Schneiders state that RBC owed them "duties of care, duties of good faith and loyalty, duties to act solely in the interests of the Schneiders, duties to provide complete information, and duties to follow instructions, and that if the Court ultimately determines that the Schneiders, without their knowledge, approval, or consent, were bound to any agreement, then it was due to RBC's breach of these duties." (Defs.' Opp. to RBC at 6-7.) The only remaining claim by Highland is that the Schneiders breached their third-party beneficiary contract with RBC; all claims premised upon a direct contract between the Schneiders and Highland were dismissed. Thus, a jury could either find, as between the Schneiders and RBC, that there was no contract or that there was a contract. If the latter is found, "the 'duty' here was to perform on the transaction involving the Notes -- something only the Schneiders could do. The Schneiders have cited no case where an alleged implied indemnitor was held liable to perform a contract that only the alleged indemnitee could perform." (RBC's Reply at 4.)

17

all or a portion of the economic loss sustained by plaintiff,
[third-party plaintiff] cannot be held liable for the same loss
because the proximate cause of that loss would be [third-party
defendant's] breach of contract, not anything [third-party
plaintiff] did or did not do"). The Schneiders will still, of
course, argue to the jury that there was no oral contract with
RBC.[12] But if the jury ultimately finds that such a contract
indeed existed, the Schneiders cannot be indemnified by RBC.

b. Contribution

Under New York's contribution statute, "two or more persons
who are subject to liability for damages for the same personal
injury, injury to property or wrongful death, may claim
contribution among them whether or not an action has been
brought or a judgment has been rendered against the person from
whom contribution is sought." N.Y. C.P.L.R. § 1401; see

---

[12] In an attempt to show that no contract was formed, the Schneiders could
still put forth evidence of RBC's:

(i) failing to use due care in its communications with
customers, with the Schneiders, and with the public; (ii)
failing to adequately supervise its salespeople, including
but not limited to Kenneth Ambrecht and James Wood; (iii)
failing to keep the Schneiders informed with respect to
RBC's efforts to perform under the Letter Agreement and the
results thereof; (iv) making false statements and by
omitting to disclose material facts to Highland and others;
(v) failing to make reasonable efforts to determine whether
or not any of the Schneiders was prepared to sell any of
his or her Notes at a substantial discount, and (vi)
failing to make reasonable efforts to determine whether or
not any of the Schneiders had agreed to sell any of his or
her Notes.

(Defs.' Ans. & Third Am. Compl. ¶ 126.) These allegations, supported by
evidence, might persuade a jury that no contract was formed. They are not,
however, grounds for indemnification from RBC if a jury finds that the
Schneiders failed to perform on their contract.

18

Morse/Diesel, Inc. v. Trinity Industs., Inc., 859 F.2d 242, 249 (2d Cir. 1988) ("[S]ection 1401 creates a right of contribution only among joint tortfeasors."). The New York Court of Appeals has determined that the "purely economic loss resulting from a breach of contract does not constitute 'injury to property' within the meaning of New York's contribution statute. . . ." Bd. of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley, 71 N.Y.2d 21, 26, 517 N.E.2d 1360, 1363 (1987). Further, the Schneiders cannot escape the "economic loss" rule simply by alleging that RBC was negligent in failing to perform its obligations with due care. See Morse/Diesel, Inc., 859 F.2d at 249-50 ("[M]erely charging a breach of a 'duty of due care,' employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim.")(quoting Bd. of Educ. of Hudson City Sch. Dist., 71 N.Y.2d at 29, 517 N.E.2d at 1365) (internal quotations omitted).

The Schneiders attempt to remove themselves from the purview of the "economic loss" rule by claiming that it does not apply where, as here, "an independent legal duty such as a professional duty is imposed incident to the contractual relationship." (Defs.' Opp. to RBC at 9 (citing Hydro Investors, Inc. v. Trafalgar Power, Inc., 227 F.3d 8, 18 (2d Cir. 2000))). In Hydro Investors, Inc., the Second Circuit explicitly noted the "limited class of cases involving liability for the violation of a professional duty." 227 F.3d at 18. That limited

19

class only includes cases, many of which the Schneiders cite, in which there are professional malpractice allegations in the primary action. See, e.g., Robinson Redevelopment Co. v. Anderson, 155 A.D.2d 755, 757, 547 N.Y.S.2d 458, 460 (3d Dep't 1989) (holding that where defendant/third-party plaintiff had been sued for professional malpractice, it could maintain a contribution claim against third-party defendant). Highland's underlying claim against the Schneiders is purely contractual. See Tempforce, Inc. v. Mun. Hous. Auth. of City of Schenectady, 222 A.D.2d 778, 779, 634 N.Y.S.2d 827, 829 (finding that while defendant/third-party plaintiff alleged that third-party defendants breached their professional duties, the third-party complaint was dismissed because it was "couched upon a pure breach of contract complaint which alleges economic loss only"). Accordingly, if the Schneiders are found liable to Highland, they cannot receive contribution from RBC.[13] The Schneiders' third-party complaint is therefore dismissed.

---

[13] Assuming, *arguendo*, that RBC did breach some professional duty to the Schneiders, the Schneiders would not be able to seek contribution. "'The critical requirement . . . is that the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought.'" Black & Veatch, 1997 U.S. Dist. LEXIS 15510, at *16 (citing Nassau Roofing & Sheet Metal Co., Inc. v. Facilities Dev. Corp., 71 N.Y.2d 599, 603, 523 N.E.2d 903, 805 (1988)). For the reasons explained above, see supra n. 11, any duty breached by RBC could not have caused the Schneiders to fail to perform on the alleged oral contract. Because this is the only injury for which Highland seeks damages and RBC could not have had a part in causing or augmenting the injury, the Schneiders cannot maintain a contribution claim.

20

### III. RBC's Counterclaims

Despite the dismissal of the Schneiders' third-party complaint, this Court will exercise supplemental jurisdiction over RBC's counterclaims pursuant to 28 U.S.C. § 1367(a). See Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 726-27 (2d Cir. 2000) (Sotomayor, J.) (holding that the limitations on supplemental jurisdiction imposed by Section 1367(b) do not apply to claims by third parties who are involuntarily brought into court). RBC asserts the following claims against the Schneiders: (1) breach of duty to negotiate; (2) breach of oral contract to sell the promissory notes; (3) fraud and misrepresentation; (4) fraudulent concealment; (5) breach of the letter agreement; and (6) breach of the covenant of good faith and fair dealing. The Schneiders move for summary judgment to dismiss each claim.

#### a. Counts One and Two

RBC's first two claims against the Schneiders are premised upon the same underlying fact, namely that the Schneiders, through their agent, Rauch, entered into an agreement to sell the promissory notes to RBC. In assessing these claims, the Court is guided by certain findings in its original opinion that were unaffected by the Second Circuit's opinion. First, this Court considered whether Rauch had the authority to bind the Schneiders to a contract to sell their notes. After listing the requirements for apparent authority under New York law, it was

21

determined that a genuine issue of material fact exists as to whether the Schneiders' actions compelled RBC to believe that Rauch had the authority to bind the Schneiders. Highland Capital Mgmt., 2005 U.S. Dist. LEXIS 14912, at *34-35. Second, after reviewing case law related to oral contract formation, this Court ruled that "a rational juror could find that the purported oral agreement encompassed all material terms between the Schneiders/[Rauch] and RBC," id. at *38, and that "a rational juror [could] find[] that the parties intended to be bound absent a writing." Id. at *42. As a result of these prior findings, a jury will decide whether Rauch had the authority to bind the Schneiders and, if so, whether the Schneiders and RBC agreed to the fundamental terms of an agreement and intended to be bound. Accordingly, the Schneiders' motion for summary judgment to dismiss Counts One and Two of RBC's third-party counterclaims is denied.

### b. Counts Three and Four

RBC next claims that the Schneiders are liable for fraud because on March 14, 2001, Rauch misrepresented to RBC that the Schneiders intended to sell the notes, and "at the time they were made those representations were false." (RBC's Answer & Counterclaims ¶ 147.) In support of this claim, RBC states that, at the time of the purported agreement, the Schneiders already knew that McNaughton likely would merge or be acquired by another company, a fact that they did not communicate to RBC.

22

To state a claim for fraud, RBC must demonstrate: (1) a material false misrepresentation; (2) that the misrepresentation was made for the purpose of inducing reliance by RBC; (3) reasonable reliance by RBC; and (4) injury to RBC. See Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001) (citing Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421, 668 N.E.2d 1370, 1373 (1996)). Assuming, *arguendo*, that the first three elements are satisfied, RBC claims that the resulting injury was in the form of business damages, specifically that "Highland and Fidelity stopped doing business with the RBC High-Yield Desk." (RBC's Answer & Counterclaims ¶ 152.) The Schneiders argue that "RBC's claimed damages, future business losses of at least $4 million, are not recoverable on a fraud claim." (Defs.' Memo. of Law at 54.) Under the "out-of-pocket" rule, which limits the damages for fraud in New York to actual pecuniary loss, "there can be no recovery of profits which would have been realized in the absence of fraud." Lama Holding Co., 88 N.Y.2d at 421, 668 N.E.2d at 1373. Such profits include the lost business damages sought by RBC. See Solar Travel Corp. v. Nachtomi, No. 00 Civ. 3564, 2001 U.S. Dist. LEXIS 7549, at *17-18 (S.D.N.Y. June 8, 2001) ("[L]ost profits, goodwill and business opportunities cannot be recovered under a fraud theory under New York law."); Kulas v. Adachi, No. 96 Civ. 6674, 1997 U.S. Dist. LEXIS 6868, at *29 (S.D.N.Y. May 16, 1997) (stating that injury to business reputation and loss of business and

23

customers are not out-of-pocket losses). Accordingly, RBC
cannot allege any injury recoverable under a fraud claim and its
third cause of action is dismissed.[14]

RBC's fourth cause of action -- fraudulent concealment --
requires: (1) an omission of material fact; (2) intent to
defraud; (3) a duty to disclose; (4) reasonable reliance upon
the omission; and (5) damages suffered as a result of the
reliance. See Waksman v. Cohen, No. 00 Civ. 9005, 2002 U.S.
Dist. LEXIS 21209, at *14-15 (S.D.N.Y. Nov. 5, 2002). Here, RBC
alleges that the Schneiders concealed the merger of McNaughton,
which it had a duty to disclose to RBC. Assuming this to be
true, RBC nevertheless cannot show that its damages in this case
were caused by the Schneiders' failure to disclose. That the
Schneiders knew about the McNaughton merger may have caused them
to renege on the alleged transaction, but it could not have been

---

[14] RBC asserts two other bases for fraud, both of which fail for reasons in
addition to their failure to allege injury. First, RBC claims that the
Schneiders are liable for fraud because they represented to RBC that they
sought to sell their notes yet "claim[ed] in statements made in the discovery
of this action [] that they never intended to enter into a transaction with
RBC." (RBC's Answer & Counterclaims ¶ 149.) RBC's support for this claim
appears to be that the Schneiders have repeatedly stated that they wanted to
"price" the notes. (RBC's 56.1 ¶ 114.) The Schneiders' desire to price their
notes, however, does not negate their intent to sell those notes. In any
event, this fact cannot lead to liability for fraud because RBC admits that
"the evidence is clear that the Schneiders fully intended to sell Notes."
(Id.) Thus, RBC cannot make out the first element of a fraud claim, namely
that the Schneiders misrepresented a material fact. Second, RBC claims that
the Schneiders had inside information from McNaughton that payment on the
notes would be minimal, leading the Schneiders "to want to dump" their notes.
(RBC's Opp. at 41.) Assuming this to be true, and assuming that RBC relied
on this misrepresentation, RBC still cannot show a causal link between their
reliance and the resulting harm. Perhaps this claim would be viable if a
trade between RBC and the Schneiders was consummated, and if after that trade
RBC had discovered that payment on the notes would be minimal. In this case,
however, the Schneiders kept their notes. Consequently, RBC had no injury
related to the alleged fraudulent representations of the value of those
notes.

24

the direct cause of RBC's loss. See supra n. 14. Indeed, the typical fraudulent concealment case involves a plaintiff who, following a material omission by defendant, unwittingly enters into an agreement. Here, to the contrary, the fact concealed by the Schneiders led them to keep their notes. Whether this amounted to a breach of the duty to negotiate or a breach of contract is for the jury to decide. As such, RBC's claim -- premised upon the notion that "in the trading industry, the gold standard is that a person's word is his bond and verbal agreements are binding" (RBC's Opp. at 44) -- sounds in contract, and not in tort. RBC's fraudulent concealment claim is therefore dismissed; with no tort claims remaining, RBC cannot seek punitive damages.

c.   Counts Five and Six

In its final two claims, RBC alleges that the Schneiders breached the Letter Agreement and the related covenant of good faith and fair dealing. The Letter Agreement set out that any transaction remained in the sole discretion of the Schneiders and RBC, "including without limitation with respect to price." While RBC points to the principle that, "'[e]ven when a contract confers decision-making power on a single party, the resulting discretion is nevertheless subject to an obligation that it be exercised in good faith,'" (RBC's Opp. at 49-50 (citing Travellers Int'l, A.G. v. Trans World Airlines, Inc., 41 F.3d 1570, 1575 (2d Cir. 1994))), its claim against the Schneiders is

25

not that the Schneiders exercised their discretion in bad faith.
Rather, RBC contends that a transaction was consummated, whereby
the Schneiders would sell their notes to RBC, who would then
flip the notes to Highland and Fidelity. The Schneiders,
however, "reneged on the agreement." (RBC's Opp. at 49.) RBC's
attempt to rehash its claim for breach of the oral contract as a
breach of the Letter Agreement must fail. RBC further states
that "the Schneiders never intended to reach an agreement as to
size and price for the Notes. . . ." (Id. at 50.) This
allegation does not save RBC's claim because it is unsupported
by the record and contradicted by RBC's own Rule 56.1 statement.
(RBC's 56.1 ¶ 114.) Thus, Counts Five and Six of RBC's third-
party counterclaims are dismissed.

## Conclusion

For the foregoing reasons, the Schneiders' motion for summary judgment is GRANTED as to Counts One and Two of Highland's Complaint. Further, RBC's motion for summary judgment to dismiss the Schneiders' third-party complaint is GRANTED and the Schneiders' motion for summary judgment to dismiss RBC's third-party counterclaims is GRANTED IN PART and DENIED IN PART. Accordingly, a jury will decide: (1) if the Schneiders breached their duty to negotiate with RBC; (2) if the Schneiders breached an oral contract to sell the promissory notes to RBC; and (3) whether Highland was an intended third-party beneficiary of the contract between the Schneiders and RBC.

**SO ORDERED.**
New York, New York
January **16** , 2008

Peter K. Leisure
U.S.D.J.

27