UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1 31 08

HIGHLAND CAPITAL MANAGEMENT,
L.P.,

    Plaintiff,

        - against -

LEONARD SCHNEIDER, LESLIE
SCHNEIDER, SCOTT SCHNEIDER, and
SUSAN SCHNEIDER,

    Defendants.

LEONARD SCHNEIDER, LESLIE
SCHNEIDER, SCOTT SCHNEIDER, and
SUSAN SCHNEIDER,

    Third-Party Plaintiffs,

        - against -

RBC CAPITAL MARKETS CORPORATION
f/k/a/ RBC DOMINION SECURITIES
CORPORATION,

    Third-Party Defendant and
    Third-Party Counterclaimant.

**OPINION AND ORDER**

02 Civ. 8098 (PKL)

## Appearances

LACKEY HERSHMAN, L.L.P.
Paul B. Lackey, Esq.
Jamie R. Welton, Esq.
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219

<u>Attorneys for Plaintiff</u>

TROUTMAN SANDERS L.L.P.
Alvin M. Stein, Esq.
Katherine C. Ash, Esq.
405 Lexington Avenue
New York, New York 10174

<u>Attorneys for Defendants/Third-Party Plaintiffs</u>

SEWARD & KISSEL L.L.P.
Jack Yoskowitz, Esq.
Michael J. McNamara, Esq.
One Battery Park Plaza
New York, New York 10004

<u>Attorneys for Third-Party Defendant/Third-Party
Counterclaimant</u>

**LEISURE, District Judge:**

Plaintiff Highland Capital Management, L.P. ("Highland") brings this action to recover in contract from the defendants, Leonard Schneider, Leslie Schneider, Scott Schneider, and Susan Schneider (collectively, "the Schneiders") for their refusal to sell certain promissory notes, valued at $69 million, to Highland and third-party-defendant and counterclaimant, RBC Capital Markets Corporation, formerly known as RBC Dominion Securities Corporation ("RBC"). The parties have filed multiple motions in limine in anticipation of trial.

BACKGROUND

The factual and procedural background of this case is explained in detail in the Court's recent summary judgment Opinion, dated January 16, 2008, familiarity with which is assumed. See Highland Capital Mgmt., L.P. v. Schneider, No. 02 Civ. 8098, 2008 WL 152778, 2008 U.S. Dist. LEXIS 3235 (S.D.N.Y. Jan. 16, 2008). Any additional relevant facts are included in the discussion.

DISCUSSION

**I. Motions in Limine and Federal Rules of Evidence**

A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions in limine. See Luce v. United States, 469 U.S. 38, 41 n.4

(1984).  Indeed, "[t]he purpose of an in limine motion is to
aid the trial process by enabling the Court to rule in
advance of trial on the relevance of certain forecasted
evidence, as to issues that are definitely set for trial,
without lengthy argument at, or interruption of, the trial."
Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996)
(internal quotation marks omitted); see also Commerce Funding
Corp. v. Comprehensive Habilitation Servs., Inc., No. 01 Civ.
3796, 2005 WL 1026515, at *3, 2005 U.S. Dist. LEXIS 7902, at
*9 (S.D.N.Y. May 2, 2005)(Leisure, J.) ("The purpose of a
motion in limine is to allow the trial court to rule in
advance of trial on the admissibility and relevance of
certain forecasted evidence.").  "The court's ruling
regarding a motion in limine is 'subject to change when the
case unfolds.'" Id. at *4, 2005 U.S. Dist. LEXIS 7902, at *11
(quoting Luce, 469 U.S. at 41).  Accordingly, this Opinion
and Order constitutes a preliminary determination subject to
change.

Rule 402 of the Federal Rules of Evidence provides that
"[a]ll relevant evidence is admissible, except as otherwise
provided by . . . Act of Congress, [or] by these rules. . . .
Evidence which is not relevant is not admissible." Fed. R.
Evid. 402.  The "standard of relevance established by the
Federal Rules of Evidence is not high." United States v.

2

Southland Corp., 760 F.2d 1366, 1375 (2d Cir. 1985)
(Friendly, J.). Evidence "having any tendency to make the
existence of any fact that is of consequence to the
determination of the action more probable or less probable
than it would be without the evidence" is relevant. Fed. R.
Evid. 401.

Under Rule 403 of the Federal Rules of Evidence, the
trial court has "broad discretion to exclude even relevant
evidence if its probative value is substantially outweighed
by the danger of confusion of the issues or if it would be
needlessly cumulative." United States v. Beech-Nut Nutrition
Corp., 871 F.2d 1181, 1193 (2d Cir. 1989) (citing Fed. R.
Evid. 403; United States v. Carter, 801 F.2d 78, 83 (2d Cir.
1986); United States v. Martinez, 775 F.2d 31, 37 (2d Cir.
1985)). Rule 403 also provides for the exclusion of relevant
evidence if "its probative value is substantially outweighed
by the danger of unfair prejudice." Fed. R. Evid. 403.
Evidence is prejudicial under Rule 403 if it "involves some
adverse effect . . . beyond tending to prove the fact or
issue that justified its admission into evidence." United
States v. Gelzer, 50 F.3d 1133, 1139 (2d Cir. 1995). The
Court will exclude such evidence if it has "an undue tendency
to suggest decision on an improper basis, commonly, though
not necessarily, an emotional one." Fed. R. Evid. 403,

3

advisory committee's notes.  Because Rule 403 excludes
relevant evidence, "it is an extraordinary remedy that must
be used sparingly." George v. Celotex Corp., 914 F.2d 26, 31
(2d Cir. 1990).  The "district court retains broad discretion
to balance the evidence's potential prejudice . . . against
its probative value." United States v. Downing, 297 F.3d 52,
59 (2d Cir. 2002).

## II.  Highland's Objections to Magistrate's Opinion and Order Striking Expert Testimony of Sean F. O'Shea

On July 19, 2005, Magistrate Judge Gabriel W.
Gorenstein issued an Opinion and Order granting the
Schneiders' Motion to Exclude Proposed Expert Testimony of
Sean O'Shea and denying Highland's request to supplement
the O'Shea Report (the "Gorenstein Order"). See Highland
Capital Mgmt., L.P. v. Schneider, 379 F. Supp. 2d 461
(S.D.N.Y. 2005).  On July 29, 2005, Highland objected to
Magistrate Gorenstein's Opinion and Order.  The Schneiders
responded on August 10, 2005.  The Court stayed ruling on
Highland's objection because of the Court's dismissal of
the case on July 25, 2005.  However, in light of the Second
Circuit's decision in this case, and the forthcoming trial,
the Court now addresses Highland's objection.  For the
reasons that follow, Highland's objection is DENIED.

Rule 72(a) of the Federal Rules of Civil Procedure
governs the Court's review of objections to a magistrate
judge's nondispositive pre-trial order. Rule 72(a) states
that "[t]he district judge in the case must consider timely
objections and modify or set aside any part of the order
that is clearly erroneous or is contrary to law." Fed. R.
Civ. P. 72(a).

A district court is justified in finding a magistrate
judge's ruling "clearly erroneous" where, "'although there
is evidence to support it, the reviewing court on the
entire evidence is left with the definite and firm
conviction that a mistake has been committed.'" Labarge v.
Chase Manhattan Bank, No. 95 Civ. 173, 1997 WL 583122, at
*1, 1997 U.S. Dist. LEXIS 13803, at *3 (N.D.N.Y. Sept. 3,
1997) (quoting United States v. United States Gypsum Co.,
333 U.S. 364, 395 (1948)); accord Am. Rock Salt Co., LLC v.
Norfolk S. Corp., 371 F. Supp. 2d 358, 360 (W.D.N.Y. 2005)
("[R]eversal is warranted only if the reviewing court is
'left with the definite and firm conviction that a mistake
has been committed.'" (quoting Easley v. Cromartie, 532
U.S. 234, 242 (2001))); United Parcel Serv. of Am., Inc. v.
The Net, Inc., 222 F.R.D. 69, 70-71 (E.D.N.Y. 2004) ("An
order is 'clearly erroneous' only when \the reviewing court
on the entire evidence is left with the definite and firm

conviction that a mistake has been committed.'" (quoting Thompson v. Keane, No. 95 Civ. 2442, 1996 WL 229887, at *1 (S.D.N.Y. May 6, 1996))). Consequently, "parties seeking to overturn the Magistrate's discovery rulings 'bear a heavy burden.'" Citicorp v. Interbank Card Ass'n, 87 F.R.D. 43, 46 (S.D.N.Y. 1980); accord Com-Tech Assocs. v. Computer Assocs. Int'l, Inc., 753 F. Supp. 1078, 1099 (E.D.N.Y. 1990) (same); 12 Charles Alan Wright et al., Federal Practice and Procedure § 3069, at 350-51 (2d ed. 1997) ("[I]t is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge."). Given such a highly deferential standard of review, magistrate judges are afforded broad discretion and "reversal is appropriate only if that discretion is abused." Commodity Futures Trading Com'n v. Standard Forex, Inc., 882 F. Supp. 40, 42 (E.D.N.Y. 1995); accord Doe v. Marsh, 899 F. Supp. 933, 934 (N.D.N.Y. 1995) (stating abuse-of-discretion standard applies).

The Court has reviewed the Gorenstein Order and finds no clear error. In considering expert testimony, the Court must determine whether the testimony would "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." United States v. Lumpkin, 192

6

F.3d 28, 289 (2d Cir. 1999)(quoting United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994))(internal quotation marks omitted). Magistrate Judge Gorenstein fairly and appropriately applied the law in this Circuit. He considered each section of the O'Shea Report in turn and found each section to be inadmissible. It was not clear error for Magistrate Judge Gorenstein to hold that O'Shea's testimony would impermissibly impinge upon the province of both the fact finder, Highland Capital Mgmt., 379 F. Supp. 2d at 469-70, and the Court, id. at 470-72, and is not relevant or necessary to assist the jury, id. at 473.

Additionally, Magistrate Judge Gorenstein's denial of Highland's request to defer consideration of the motion and supplement the report was appropriate. "Preclusion of testimony is an entirely appropriate measure when, as at present, the testimony a party seeks to present is simply inadmissible." Taylor v. Evans, No. 94 Civ. 8425, 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997). Furthermore, the "curative measures" put forth by Highland would not have "alleviate[d] the underlying defects" in O'Shea's proffered testimony. Id. Magistrate Judge Gorenstein's analysis was sound, and certainly does not amount to clear error. The Court therefore accepts the Gorenstein Order, and affirms its grant of defendants' motion to exclude O'Shea's

proffered testimony in its entirety and denial of

Highland's request to supplement the O'Shea Report.

## III. Expert Witnesses

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical or other specialized
> knowledge will assist the trier of fact to
> understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by
> knowledge, skill, experience, training or
> education may testify thereto in the form of an
> opinion or otherwise , if (1) the testimony is
> based upon sufficient facts or data, (2) the
> testimony is the product of reliable principles
> and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of
> the case.

Fed. R. Evid. 702.  Furthermore, Rule 702 grants the district

judge discretionary authority "to determine [the] reliability

[of an expert's testimony] in light of the particular facts

and circumstances of the particular case." Kumho Tire

Company, Ltd. v. Carmichael, 526 U.S. 137, 158 (1999).

In securities cases, federal courts have admitted

expert testimony to assist the trier of fact in

understanding trading patterns, securities industry

regulations, and complicated terms and concepts inherent in

the practice of the securities industry. See, e.g., United

States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991)

("Particularly in complex cases involving the securities

industry, expert testimony may help a jury understand

unfamiliar terms and concepts."); S.E.C. v. Lorin, 877 F.

Supp. 192, 196 (S.D.N.Y. 1995), modified, 76 F.3d 458 (2d

Cir. 1996); Marx & Co., Inc. v. Diner's Club, Inc., 550

F.2d 505, 511 (2d Cir. 1977), cert. denied, 434 U.S. 861

(1977). In Marx, the Second Circuit recognized that while

an expert "may testify to an ultimate fact, and to the

practices and usages of a trade, we think care must be

taken lest, in the field of securities law, he be allowed

to usurp the function of the judge." 550 F.2d at 511.

In Daubert v. Merrell Dow Pharms., Inc., the Supreme

Court focused on the "admissibility of scientific expert

testimony," and discussed specific factors in evaluating

the reliability of that testimony, such as "testing, peer

review, error rates and 'acceptability' in the relevant

scientific community, some or all of which might prove

helpful in determining reliability of a particular

scientific 'theory or technique.'" Kumho Tire Co., Ltd.,

526 U.S. at 141 (quoting Daubert v. Merrell Dow Pharms.,

Inc., 509 U.S. 579, 593-94, 597 (1993)). The Court has

subsequently held that, "whether Daubert's specific factors

are, or are not, reasonable measures of reliability in a

particular case is a matter that the law grants the trial

judge broad latitude to determine," and that, in fact, "the

law grants a district court the same broad latitude when it

9

decides how to determine reliability as it enjoys in respect to its ultimate reliability determination". Kumho, 526 U.S. at 142, 153.

Rule 704 of the Federal Rules of Evidence provides that "testimony in the form of an opinion or an inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Under Rule 704(a), an expert witness may testify to the ultimate issue of fact in the case, "but such opinions may not be 'phrased in terms of inadequately explored legal criteria.'" Media Sport & Arts v. Kinney Shoe Corp., No. 95 Civ. 3901, 1999 WL 946354, at *1, 1999 U.S. Dist LEXIS 16035, at *3 (S.D.N.Y. Oct. 16, 1999) (Leisure, J.) (quoting Fed. R. Evid. 704(a), advisory committee's notes). While the expert can make factual conclusions that embrace an ultimate issue to be decided by the fact-finder, the expert cannot give testimony stating ultimate legal conclusions based upon those facts, nor can that testimony track the language of the statute or the law that the defendants are accused of violating. See Bilzerian, 926 F.2d at 1294; United States v. Scop, 846 F.2d 135, 140, modified, 856 F.2d 5 (2d Cir. 1988); Marx & Co., Inc., 550 F.2d at 510-11.

## A. The Schneiders' Motion in Limine No. 1 to Exclude Proposed Expert Testimony Proffered by Highland and RBC

The Schneiders move pursuant to Rules 104, 401, 402, 403 and 702 of the Federal Rules of Evidence and Rule 37 of the Federal Rules of Civil Procedure to exclude proposed expert testimony proferred by Highland and RBC. The Schneiders' motion relates to ten witnesses proffered by Highland, one of whom also was proffered by RBC. Highland and RBC oppose the motion.

### 1. Sean O'Shea

The Schneiders move to preclude Highland and RBC from introducing any opinion testimony by O'Shea. As discussed above, Highland objected to the Gorenstein Order granting the Schneiders' motion to exclude O'Shea's testimony. In light of the Court's denial of Highland's objection and affirmance of the Gorenstein Order excluding O'Shea, the Schneiders' motion to preclude Highland and RBC from introducing any opinion testimony by O'Shea is GRANTED.

### 2. John J. Duval, Sr.

The Schneiders assert that the proposed testimony of John J. Duval, Sr. ("Duval") is inadmissible and should be excluded. The Schneiders state that Duval's opinion consists of "*ipse dixit* conclusions, based upon Duval's interpretation of the 'facts' and the law, and his views as

11

to how the law, as he perceives it, ought to be applied to
the facts as he interprets them and are all inadmissible."
(Defs.' Mot. No. 1 at 18.)

As an initial matter, Duval is qualified to testify.
He has over twenty years of experience in the securities
industry, as a retail broker and NASD and NYSE arbitrator.
(Duval Report.)  Duval also has extensive experience as a
consultant and expert witness. (Id.)

Duval may testify as to the customs and practices of
the industry.  "Particularly in complex cases involving the
securities industry, expert testimony may help a jury
understand unfamiliar terms and concepts." Bilzerian, 926
F.2d at 1294; see also S.E.C. v. U.S. Envtl., Inc., No. 94
Civ. 6608, 2002 WL 31323832, at *2, 2002 U.S. Dist. LEXIS
19701, at *7 (S.D.N.Y. Oct. 16, 2002)(Leisure, J.).
Industry custom and practice is relevant to the issues
remaining in this case.  Therefore, this testimony is
admissible and helpful to the jury.  The Court notes that
"'[v]igorous cross-examination, presentation of contrary
evidence, and careful instruction on the burden of proof
are the traditional and appropriate means' of attack." In
re Blech Sec. Litig., No. 94 Civ. 7696, 2003 WL 1610775, at
*25, 2003 U.S. Dist. LEXIS 4650, at *69-70 (S.D.N.Y. Mar.
26, 2003)(Sweet, J.) (quoting Daubert, 509 U.S. at 596).

12

This may include attack on what is the relevant industry, or what are the relevant customs and practices, for a transaction that the Schnieders assert concerns "a limited number of unusual instruments." (Defs.' Mot. No. 1 at 26-27.) Therefore, these "'conventional devices, rather than wholesale exclusion' are 'the appropriate safeguards,'" for the Schneiders to attack Duval's testimony. Blech Sec. Litig., 2003 WL 1610775, at *25, 2003 U.S. Dist. LEXIS 4650, at *70 (quoting Daubert, 509 U.S. at 596). "[T]he jury can best form a judgment when presented with . . . experts' competing theories." Id. at *20, 2003 U.S. Dist. LEXIS 4650, at *55.

The certified question posed to the New York Court of Appeals by the Second Circuit in this case established that the notes in question are "securities." Highland Capital Mgmt., L.P. v. Schneider, 8 N.Y.2d 406 (2007). Because this is a settled issue, Duval need not opine on whether or not the notes are securities. (Defs.' Mot. No. 1 at 15; Ash Decl. Ex. 8 at 3.) To the extent that the status of the notes as securities may inform Duval's testimony on other relevant issues, Duval may offer his opinion on those other relevant issues.

However, Duval's opinion as to the credibility of witnesses is inadmissible. See Scop, 846 F.2d at 142

("[T]he credibility of witnesses is exclusively for the determination of the jury."). Duval may not testify regarding the credibility of Leonard Schneider, Glen Rauch ("Rauch"), or other witnesses. Such subjective review of the evidence is improper, and Duval does not have "personal knowledge of the underlying facts." See Blech Sec. Litig., 2003 WL 1610775, at *21-22, 2003 U.S. Dist. LEXIS 4650, at *62-65 (internal quotation marks omitted). Further, Duval's factual narrative of events giving rise to this action is inadmissible. Duval has no personal knowledge of these facts and they are lay matters that the jury is capable of understanding and deciding without Duval's testimony. See, e.g., In re Rezulin Prods. Liab. Lit., 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004).

Duval also cannot testify as to ultimate legal conclusions. "[A]lthough an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts." Bilzerian, 926 F.2d at 1294. Duval, therefore, cannot state that he knows that Leonard Schneider or Rauch had authority to bind the Schneiders, or that there was a binding agreement. "Even if his testimony is couched in terms of industry practices, the expert still may not, under any circumstances, opine on the ultimate legal issue

14

in the case." Media Sport & Arts s.r.l., 1999 WL 946354, at
*3, 1999 U.S. Dist. LEXIS 16035, at *10 (citing Bilzerian,
926 F.2d at 1295). Duval can, however, based upon his
experience, point to factors indicating to him that Leonard
Schneider or Rauch had authority to bind the Schneiders or
that there was an agreement. See Blech Sec. Litig., 2003 WL
1610775, at *22-23, 2003 U.S. Dist. LEXIS 4650, at *62-65.
Duval's testimony will likely prove helpful in allowing the
trier of fact to better understand the evidence and
providing the trier of fact with the tools necessary to
make an ultimate determination.

The Schneiders also argue that Highland should be
precluded from offering Duval's opinion from his
Declaration, dated February 7, 2005, and submitted as part
of Highland's Exhibit 169 in the Appendix in Support of
Plaintiff's Opposition to the Schneiders' Motion for
Summary Judgment. Specifically, the Schneiders contest
Duval's addition of a new opinion with respect to the
phrase in the Letter Agreement that "the consummation of
any transaction remains in the sole discretion and
satisfaction of the holders and RBC." (Defs.' Mot. No. 1 at
32-34.) The Schneiders oppose this testimony on the
grounds that it is unsupported and that it goes beyond the

15

scope of Duval's Rule 26 report. Highland fails to respond to the Schneiders' contentions on these issues.

Rules 26 and 37 of the Federal Rules of Civil Procedure guide the Court's consideration here. Rule 26(e) governs supplementation of expert disclosures.[1] Rule 37(c)(1) provides sanctions for failure to comply with the requirement to supplement.[2] When considering whether to exclude the evidence under Rule 37, Courts in this Circuit have considered four factors: "(1) the party's explanation for the failure to comply . . . , (2) the importance of the testimony of the precluded witness, (3) the prejudice suffered by the opposing party . . . ; and (4) the

---

[1] Rule 26(e) states that:

> (1) In general. A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
>> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>> (B) as ordered by the court.
> (2) Expert Witness. For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

[2] Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. . . ."

16

possibility of a continuance." Softel, Inc. v. Dragon
Medical and Scientific Communications, Inc., 118 F.3d 955,
961 (2d Cir. 1997) (citing Outley v. City of New York, 837
F.2d 587, 590 (2d Cir. 1988)); see also In re Motel 6 Secs.
Litig., 161 F. Supp. 2d 227, 243 (S.D.N.Y. 2001). Here,
Highland provides no explanation, and this limited portion
of Duval's testimony is not of great importance. Further,
Duval's Declaration was filed after discovery was closed,
therefore, the Schneiders would be prejudiced and a
continuance would have been impractical. Thus, the factors
favor exclusion. Duval's Declaration should be stricken
and Duval cannot testify as to these new opinions.

### 3. Gerald A. Guild

Both Highland and RBC proffer Gerald A. Guild
("Guild") as an expert witness. Guild is qualified to
testify. He has over forty years of experience in the
securities industry and has testified numerous times in
securities actions. (Guild Report.)

As with Duval's testimony on industry custom and
practice, Guild, for the same reasons, may testify as to
the customs and practices of the industry. It is relevant
to this case and may prove helpful to the jury. The Court
again reiterates that the Schneiders can, and should, use
cross-examination, contrary evidence, and competing expert

17

opinion to attack Highland's and RBC's experts' opinions.
See Blech Sec. Litig., 2003 WL 1610775, at *25, 2003 U.S.
Dist. LEXIS 4650, at *69-70.

Guild also may opine as to RBC's lost business
damages. Lost business damages remains a relevant issue in
this case. Guild's opinion is based on sufficient facts,
reliable principles, and reliable application of the
principles to the facts. Guild adopts a conservative
approach to estimating a minimum spread, based on industry
experience and available data. See, e.g., U.S. Envtl.,
Inc., 2002 WL 31323832, at *3, 2002 U.S. Dist. LEXIS 19701,
at *12-13 (holding that expert's conclusions based on
analysis of documents and knowledge of standard practices
in the securities industry were admissible where expert had
over thirty years experience in the industry and testified
as an expert in numerous securities actions). Thus, it is
admissible. The Schneiders assert that Guild's lost
business damages opinion is speculative and unfounded.
(Defs.' Mot. No. 1 at 28.) The proper remedy for the
Schneiders is to use conventional methods at trial to
attack Guild's opinion. For example, as discussed further
below, their own expert, Michael Stupay, may provide a
competing opinion on lost business damages. Nonetheless,
Guild's testimony on lost business damages may prove

helpful in providing the jury with the tools to make a determination, should such a determination be necessary, and the jury may afford Guild's opinion whatever weight it deems appropriate.

Guild may not, however, opine on a party's state of mind, including that of Leonard Schneider. (Guild Report at 9.) In his report, Guild states: "Clearly on that date Leonard Schneider believed that the value of these two issues of SPNs was a deeply discounted price, likely circa 40 to 50% at best." (Guild Report at 9.) Opining about a party's state of mind, as Guild does here, is impermissible. See Rezulin, 309 F. Supp. 2d at 547 ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony."); Taylor v. Evans, No. 94 Civ. 8425, 1997 WL 154010, at *2, 1997 U.S. Dist. LEXIS 30107, at *5 (S.D.N.Y. Apr. 1, 1997)(holding that expert's "musings as to defendants' motivations" were inadmissible). Guild's belief about a party's state of mind is an improper subject for expert testimony and cannot be saved by couching his opinion as "industry custom and practice." (Defs.' Mot. No. 1 at 27.)

Further, Guild's opinion as to the credibility of witnesses is inadmissible. See Scop, 846 F.2d at 142 ("[T]he credibility of witnesses is exclusively for the

19

determination of the jury."). Guild may not opine as to the credibility of Leonard Schneider, Rauch, RBC employees, or other witnesses. (Defs.' Mot. No. 1 at 19-20.) Such subjective review of the evidence is improper, and Guild does not have "personal knowledge of the underlying facts." See Blech Sec. Litig., 2003 WL 1610775, at *21-22, 2003 U.S. Dist. LEXIS 4650, at *59 (internal quotation marks omitted). Additionally, Guild's factual narrative of events giving rise to this action is inadmissible. Guild has no personal knowledge of these facts and they are lay matters that the jury is capable of understanding and deciding without Guild's testimony. See, e.g., Rezulin, 309 F. Supp. 2d at 541.

Guild also cannot testify as to ultimate legal conclusions. "[A]lthough an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts." Bilzerian, 926 F.2d at 1294. Guild, therefore, cannot state that he knows that Rauch was the Schneiders' agent, that there was a "firm offer," that a binding agreement was formed, or that the Scheinders breached that agreement. (Defs.' Mot. No. 1 at 21.) "Even if his testimony is couched in terms of industry practices, the expert still may not, under any circumstances, opine on the

ultimate legal issue in the case." Media Sport & Arts
s.r.l., 1999 WL 946354, at *3, 1999 U.S. Dist. LEXIS 16035,
at *10 (citing Bilzerian, 926 F.2d at 1295).  Guild can,
however, point to factors indicating to him that Rauch was
the Schneiders' agent, that there was a "firm offer," that
a binding agreement was formed, or that the Scheinders
breached that agreement. See Blech Sec. Litig., 2003 WL
1610775, at *22-23, 2003 U.S. Dist. LEXIS 4650, at *62-65.

### 4. Highland and RBC Officers and Employees

The Schneiders also seek to exclude Highland's
proposed expert testimony of seven present or former
officers or employees of Highland or RBC:  Jim Dondero
("Dondero"), Mark Okada ("Okada"), Mike Rich ("Rich"),
Ethan Underwood ("Underwood"), Ken Ambrecht ("Ambrecht"),
Jim Wood ("Wood"), and Peter Parent ("Parent").  (Defs.'
Mot. No. 1 at 23-24.)  In its expert witness disclosures,
Highland describes the proffered testimony of Dondero,
Okada, Underwood, and Rich in nearly identical language.
For example, for Underwood, Highland states that:

> Mr. Underwood may opine that the Notes were
> securities, that 51% of the face value of the
> Notes represented a fair price for the Notes in
> March 2001, and that agreeing orally to the price
> and size of a trade "subject to documentation" is
> binding in the industry and consistent with
> industry customs, practice, and course of
> dealing.  Mr. Underwood may also opine that
> refusing to document a trade after agreeing to

21

the price and size of a trade "subject to
documentation" violates NASD regulations and is
an actionable breach of the agreement to trade
the securities.  Based on the facts and
circumstances in this case, Mr. Underwood may
also opine that on March 14, 2001, Defendants
entered into an oral agreement to sell the Notes
at 51% of their face value.

(PTO at 41.)  Highland's description of Dondero's testimony
is identical to Underwood's.  Descriptions of Okada's and
Rich's testimony are the same as Underwood and Dondero,
with the addition of one sentence:  "Mr. Okada may also
opine as to the amount of pre-judgment interest owed to
Highland."[3] (PTO at 41.)  Similarly, Highland's descriptions
of the proffered testimony of Wood, Ambrecht, and Parent
are identical to each other, stating that each one "may
opine that the Notes were securities and that 51% of the
face value of the Notes represented a fair price for the
Notes in March 2001." (PTO at 42.)

Rule 403 of the Federal Rules of Evidence
provides that "[a]lthough relevant, evidence may be

---

[3] The Schneiders assert that this additional language was not in
Highland's Rule 26(a) disclosures. (Defs.' Mot. No. 1 at 23 n.16.)
Further, the Schneiders state that "[t]he customary computation of
judgment interest is not a proper subject of expert testimony.  If
Highland has in mind some other computation, it should be required to
disclose the contemplated computation . . . ." (Defs.' Mot. No. 1 at 23
n.16.)  Highland fails to respond to this point.  Therefore, the Court
assumes that Highland simply proffers testimony from Okada and Rich on
the customary computation, which is inadmissible as expert testimony.
However, if Highland proposes some alternative interest computation to
be presented by Okada or Rich, it must disclose this information to the
Schneiders, and, if necessary, the Court may revisit its decision on
the admissibility of this testimony.

22

excluded if its probative value is substantially
outweighed by the . . . considerations of undue delay,
waste of time, or needless presentation of cumulative
evidence." Fed. R. Evid. 403; see also Int'l Minerals
& Res., S.A. v. Pappas, 96 F.3d 586, 596 (2d Cir.
1996) ("A district judge has discretion to exclude
evidence if it is cumulative of evidence already in
the record."); United States v. Holmes, 44 F.3d 1150,
1157 (2d Cir. 1995) ("Absent a clear abuse of
discretion, a trial judge retains a wide latitude to
exclude irrelevant, repetitive, or cumulative
evidence."); Rezulin, 309 F. Supp. 2d at 550. The
proffered testimony of Dondero, Okada, Underwood,
Rich, Wood, Ambrecht, and Parent is needlessly
cumulative. Any admissible opinion testimony that
they would offer could be addressed by either Duval or
Guild. See F.H. Krear & Co. v. Nineteen Named Trs.,
810 F.2d 1250, 1258 (2d Cir. 1987) (affirming district
court's exclusion of expert testimony as cumulative
where at least four other witnesses testified on the
same subject). It is unnecessary and would be a waste
of time for all of these experts to opine on the same
subjects. Therefore, Highland is precluded from

23

offering expert testimony from Dondero, Okada, Underwood, Rich, Wood, Ambrecht, and Parent.

In sum, the Schneiders motion to preclude the testimony of Duval and Guild is DENIED, subject to the limitations discussed above, and the motion to preclude the testimony of Dondero, Okada, Underwood, Rich, Wood, Ambrecht, and Parent is GRANTED. The Court advises Highland and RBC and their experts to be mindful, in the testimony given at trial, of the fine line between conclusions based upon a review of the facts, and legal conclusions, wherein the expert invades upon the function of the trier of fact by instructing the Court on the law. Furthermore, the Court may alter its decision on the admissibility of specific testimony when the context of the trial renders more apparent whether such testimony is sufficiently relevant. See Luce, 469 U.S. at 41.

B. RBC's Motion to Preclude the Testimony of Defendants' Expert Witnesses Michael E. Stupay and William H. Purcell

RBC moves pursuant to Rules 403, 702, and 704 of the Federal Rules of Evidence to preclude the Schneiders from offering any evidence or testimony at trial by expert witnesses Michael E. Stupay ("Stupay") and William H. Purcell ("Purcell"). RBC asserts that both experts are

24

unqualified and lack support for their opinions and conclusions. (RBC's Expert Mot. at 1.)[4] The Schneiders oppose this motion.

### 1. Michael E. Stupay

The Schneiders propose to use the testimony of Stupay "to discuss and explain broker-dealers' recordkeeping and record making practices and to evaluate a proffered computation of alleged lost profits by a broker-dealer." (Defs.' Opp. to RBC Expert Mot. at 5.)[5] The Schneiders contend that the absence of records of an alleged purchase of the notes is probative evidence from which a jury might conclude that no agreement was reached, contrary to RBC's and Highland's assertions. (Defs.' Opp. to RBC Expert Mot. at 24.) RBC argues that Stupay's testimony and report should be excluded because he is not qualified, and his opinions are irrelevant, unreliable, and improper legal conclusions. RBC further asserts that any probative value is outweighed by the risk of unfair prejudice and confusion.

---

[4] Third-Party Defendant and Third-Party Counter-Claimant RBC Capital Markets Corporation's Memorandum of Law in Support of its Motion In Limine to Preclude the Testimony of Defendants' Expert Witnesses Michael E. Stupay and William H. Purcell hereinafter will be cited as "RBC's Expert Mot."

[5] Defendants' Memorandum of Law in Opposition to the Motion in Limine of Third-Party Defendant-Counterclaimant RBC Capital Markets Corp. to Exclude the Proposed Expert Testimony of Defendants' Expert Witnesses, Michael Stupay and William Purcell hereinafter will be cited as "Defs.' Opp. to RBC Expert Mot."

25

As the proponent of the proposed testimony, the
Schneiders have the burden of establishing admissibility by
a preponderance of the evidence. See Fed. R. Evid. 104(a),
702; Bourjaily v. United States, 483 U.S. 171 (1987). The
Court notes that "the rejection of expert testimony is the
exception rather than the rule." Fed. R. Evid. 702 advisory
committee's notes. The Schneiders have met their burden.
Stupay is a certified public account who also holds a NASD
Series 27 license. (Stupay Report at 3.) He has experience
auditing the records of registered broker-dealers. (Id.)
Contrary to RBC's assertions, Stupay need not have trading
experience in order to be qualified to opine on
recordkeeping customs and practices; his experience
auditing records of broker-dealers is sufficient.
Therefore, Stupay is qualified to opine on recordkeeping
and record making customs and practices. An evaluation of
Stupay's testimony should be left to the jury and RBC's
criticisms should be raised on cross-examination.

RBC also asserts that Stupay's testimony regarding
recordkeeping is irrelevant to the issues in this case.
RBC argues that because it that admitted there was no
documentation of the alleged agreement, any opinion on
recordkeeping practices is irrelevant. However, the Court
holds that such testimony is relevant. Even with RBC's

26

admission, without industry context, the jury may have no understanding of the importance, or lack of importance, of such documentation. The jury may find that the absence of records goes directly to the central issue in this case -- whether there was an agreement. RBC is free to attack Stupay's opinion at trial, however, it is relevant.

RBC claims that Stupay's opinion is unreliable because it consists of unsupported, conclusory assertions. (RBC's Expert Mot. at 8.) The trial court has flexibility in determining reasonable measures of reliability. See Kumho, 526 U.S. at 152; see also E.E.O.C. v. Morgan Stanley & Co., 324 F. Supp. 2d 451, 456 (S.D.N.Y. 2004). Therefore, while the Court must focus "solely on principles and methodology, not on the conclusions that they generate," Daubert, 509 U.S. at 595, it maintains discretion in determining how to assess reliability. See Kumho, 526 U.S. at 152. Stupay's opinion regarding recordkeeping and record making practices in the industry is reliable; it is grounded in industry rules, practices, and guidelines, as well as Stupay's experience. See Blech Sec. Litig., 2003 WL 1610775, at *20, 2003 U.S. Dist. LEXIS 4650, at *56-57 ("In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." (quoting Fed. R. Evid. 702 advisory committee's notes)).

27

Contrary to RBC's assertions, Stupay's testimony should not be excluded as unfairly prejudicial to RBC or due to a risk of confusion for the jury. See Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."). "In conducting this balancing test, 'the general rule is that the balance should be struck in favor of admission.'" Blech Sec. Litig., 2003 WL 1610775, at *24, 2003 U.S. Dist. LEXIS 4650, at *68 (quoting United States v. Dennis, 625 F.2d 782, 797 (8th Cir. 1980)). Although the risk of confusion is heightened with expert witness testimony, see Nimely v. City of New York, 414 F.3d 381, 397 (2d Cir. 2005), after carefully weighing the risk of prejudice and confusion, the Court finds that wholesale exclusion would be inappropriate here. Because the Schneiders' negligence claim was dismissed on summary judgment, see Highland Capital Mgmt., 2008 WL 152778, 2008 U.S. Dist. LEXIS 3235, there is no risk of confusion between Stupay's testimony and the negligence standards. (RBC Expert Mot. Reply at 6.) Further, as discussed below, Stupay is precluded from concluding that RBC violated the governing rules and guidelines. Therefore, Stupay's testimony would not be a waste of time or needlessly

cumulative because, as discussed above, Stupay's testimony regarding industry practices is relevant to the central issues of this case and may prove helpful to the jury. Under the Rule 403 balancing test, the probative value of the evidence outweighs any risk of confusion or prejudice.

Stupay's testimony should not be completely excluded under Rule 704. (RBC Expert Mot. Reply at 8-9.) Stupay can testify as to what industry customs and practices are for recordkeeping and record making. His expert opinion may be helpful to the jury by providing context for RBC's admitted lack of documentation. He cannot conclude, however, that RBC violated NYSE, NASD, or compliance manual rules. Such testimony is improper in this case and must be excluded from both his report and his testimony at trial. Stupay's industry customs and practices testimony may include a discussion of regulatory rules and other guidelines, however, he may not opine as to whether such rules and guidelines were violated. Stupay can provide context that is helpful to the jury without making impermissible legal conclusions. In addition, Stupay cannot conclude whether or not there was a binding agreement. For example, his conclusion that "there was never a trade" is precluded. (Stupay Report at 9.) He is not qualified to opine on that issue and it is an impermissible legal conclusion.

The Schneiders also offer Stupay as a rebuttal expert regarding Guild's lost profit damages opinion. RBC seeks to exclude Stupay's opinion on these issues. "Courts have often allowed expert testimony for the sole purpose of critiquing and thereby helping to explain the work of an expert witness retained by another party." Blech Sec. Litig., 2003 WL 1610775, at *20, 2003 U.S. Dist. LEXIS 4650, at *56-57. Stupay's opinion of Guild's methodology should be assessed and weighed by the trier of fact. Stupay is qualified to testify on the damages issue and his testimony is sufficiently reliable to be presented to the jury. Any deficiency in Stupay's data analysis goes to the weight of Stupay's opinion, not its admissibility. See, e.g., McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1043 (2d Cir. 1995). The jury will be able to best form a judgment by hearing the competing theories of Guild and Stupay.

## 2. William H. Purcell

The Schneiders have met their burden of showing that Purcell is qualified to testify. With thirty-five years of experience in the investment banking industry and extensive experience as an expert witness, Purcell is qualified to offer his opinion in this action. (Purcell Report at ¶¶ 2-5.) Purcell need not have trading experience of the exact type at issue in this case in order to be qualified to

opine about industry customs and practices that may be helpful to the jury. RBC's attacks on Purcell's experience may impact his opinion's probative weight, but not its admissibility. See, e.g., McCullock, 61 F.3d at 1043.

Purcell's proposed testimony regarding industry customs and practices for private placement transactions is relevant and reliable. Although RBC contests whether Purcell's private placement opinions apply to the transaction at issue in this case, the record supports the Schneiders assertion that it is relevant. (Defs.' Opp. to RBC Expert Mot. at 13.) RBC asserts that the specialized field of high-yield debt trading is not subject to the customs and practices of private placements on which Purcell opines. RBC, through cross examination and its own expert testimony, may put forth the customs and practices it claims are applicable, and attack Purcell's opinion. As a result, the jury will decide what weight to grant Purcell's opinion. Furthermore, Purcell's opinion is reliable. His opinion rests on industry principles and Purcell's extensive experience. See Blech Sec. Litig., 2003 WL 1610775, at *20, 2003 U.S. Dist. LEXIS 4650, at *56-57.

Just as the Court has precluded Duval, Guild, and Stupay from testifying as to ultimate legal conclusions, Purcell also is precluded from doing so. As discussed

31

above, Duval and Guild cannot testify regarding whether there was a binding contract or whether Rauch had authority to bind the Schneiders. As a rebuttal expert of Guild and Duval, Purcell also is precluded from testifying as to those, or similar, legal conclusions. See Fed. R. Evid. 704. Such ultimate legal conclusions cannot be saved by couching them in terms of industry practices. Media Sport & Arts s.r.l., 1999 WL 946354, at *3, 1999 U.S. Dist. LEXIS 16035, at *3 (citing Bilzerian, 926 F.2d at 1295)("Even if his testimony is couched in terms of industry practices, the expert still may not, under any circumstances, opine on the ultimate legal issue in the case.").

Additionally, Purcell cannot provide a factual narrative or opine on a party's state of mind. Duval and Guild have been precluded from offering a recitation of the facts and Purcell also cannot do so; an expert's factual narrative is unnecessary and Purcell has no personal knowledge of the underlying facts. See, e.g., Rezulin, 309 F. Supp. 2d at 541. Further, Purcell cannot state assumptions or make inferences regarding the knowledge and intent of RBC employees. See id. at 547 ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony."). This includes, for example, opining that RBC "appear[ed] concerned," (Purcell Report ¶

32

24), as well as whether an individual "was pleased," (Id. ¶ 35), or "frustrated." (Id. ¶¶ 37-38). A jury is capable of understanding and deciding these issues without an expert's opinion.

Under the Rule 403 balancing test, the probative value of Purcell's testimony outweighs any potential unfair prejudice. See Fed. R. Evid. 403. The limitations on Purcell's testimony that are set forth above sufficiently diminish RBC's risk of unfair prejudice from his testimony. Further, as discussed above, Purcell is clearly qualified to testify in this action. Any lack of experience with the specific type of transaction may be raised at trial and considered by the jury in affording Purcell's opinion whatever weight it deems appropriate.

In sum, RBC's motion to preclude the testimony of Stupay and Purcell is DENIED, subject to the above-stated limitations on their testimony and reports. The Court advises the Schneiders and their experts, however, to be mindful, in the testimony given at trial, of the fine line between conclusions based upon a review of the facts, and legal conclusions, wherein the expert invades upon the function of the trier of fact by instructing the Court on the law. The Court reserves the right to alter its decision on the

33

admissibility of specific testimony until the context
of the trial renders more apparent whether such
testimony is sufficiently relevant. See Luce, 469 U.S.
at 41.

## IV.  Taped Telephone Conversations

### A. Designation of the Recorded Conversations

Much of the evidence in this case is found on audio tape
recordings of telephone conversations between RBC personnel and
other parties.  The Schneiders, who have specifically designated
the portions of the recordings they intend to use as trial
exhibits, object to Highland's and RBC's designations of those
recordings.  Both Highland and RBC have generally designated the
recordings, describing what they plan to use at trial as
"Recorded Conversations" and "All Recorded Conversations,"
respectively.  With nearly thirty hours of recorded
conversations, the Court agrees with the Schneiders that such
broad language serves to subvert the very purpose of
designations in the pre-trial order.  By February 8, 2008,
Highland and RBC should inform the Schneiders of the particular
tape segments it reasonably anticipates introducing at trial.
Moreover, the Court does not expect the task to be onerous for
Highland or RBC, who have already created indices of the various
CD's and a "Compilation CD," highlighting the conversations most
relevant to this action.

## B. Hearsay and Relevance

The Schneiders seek a ruling excluding all taped
conversations between Highland and RBC, between Fidelity and
RBC, and amongst RBC employees. At this juncture, the Court
cannot issue an in limine ruling excluding *all* of these taped
conversations. Each conversation ultimately introduced by
Highland and RBC may have unique features that require unique
consideration by the Court, particularly as it may relate to
hearsay. As such, the Schneiders' motion is DENIED without
prejudice to its renewal upon objection at trial.
Notwithstanding the premature nature of the objection, the Court
generally is not persuaded by the Schneiders' argument that
these tapes are irrelevant because they do not involve any of
the Schneiders or Rauch. These tapes, which might show, for
instance, that Highland and RBC believed a contract existed,
appear relevant under the liberal requirements of Rule 401. See
Fed. R. Evid. 401 ("'Relevant evidence' means evidence having
any tendency to make the existence of any fact that is of
consequence to the determination of the action more or less
probable than it would be without the evidence."). The
Schneiders' contention that "[w]hatever Ambrecht tells a fellow
employee, or RBC and Highland say to each other, cannot possibly
be relevant or attributable to the Schneiders," (Defs.' Mot. No.

35

3 Reply at 7), is not germane to Rule 401, but rather is an argument to be made to the jury.

## C. Written Transcripts

The Schneiders next seek to introduce into evidence written transcripts of the taped telephone conversations; alternatively, they request a ruling that the transcripts may be used as an aid to the jury while they listen to the tapes. Highland and RBC oppose this request and cross-move to exclude the transcripts.

As the Court indicated at the December 17, 2007 hearing on this matter, based upon prior experience, "to the extent it's helpful to the jury as an aid to have a transcript where they're following the recording and reading from the transcript, I found that to be helpful." (12/17/07 Tr. at 28.) Neither Highland nor RBC adequately has explained to the Court why transcripts would not be similarly helpful in this case. After hearing samples of the tapes at the December 17 hearing, the Court agrees with the Schneiders that audibility could be an issue at trial. Consequently, while listening to a recording, a juror should have the option to use a transcript as an aid. That the parties disagree as to the accuracy of parts of the transcripts[6] is an

---

[6] The Schneiders claim that any errors in their transcripts or differences between their transcripts and RBC's transcripts are "de minimis." (Defs.' Mot. No. 3 Reply at 4.) RBC and Highland believe that the Schneiders' transcripts are "riddled with inaccuracies," (RBC's Opp. to Defs.' Mot. No. 3 at 5), and are "merely Defendants' wishful spin on the underlying evidence." (Pl.'s Opp. to Defs.' Mot. No. 3 at 10.) After reviewing some of the transcripts at the December

36

issue easily resolved by any or all of the following: (1)
competing transcripts submitted by Highland and/or RBC;[7] see
United States v. Chalarca, 95 F.3d 239, 246 (2d Cir. 1996)
(approving the district court's ruling that a party challenging
the accuracy of a transcript "could offer an alternative
transcript"); (2) Highland and/or RBC arguing to the jury in
summation that one or several of the transcripts provided were
deficient in some way; and (3) the Court giving a limiting
instruction to the jury that "the transcripts themselves are not
evidence and may be used as aids in listening to the audio tapes
and as nonbinding guides that are subject to the jurors' own
assessment of the transcripts' accuracy." United States v. Rosa,
17 F.3d 1531, 1548 (2d Cir. 1994). With these available
safeguards, the risk of confusion without a transcript is
greater than the risk of confusion with a transcript.
Accordingly, the Schneiders' motion to allow transcripts of the
taped conversation is GRANTED for use as a demonstrative aid for
the jury; the transcripts will not be admitted into evidence.

---

17, 2007 hearing, it appears that Highland and RBC have exaggerated the
amount and significance of the Schneiders' errors.

[7] To the extent that Highland or RBC wish to use their own transcripts
in addition to the transcripts they have already created, they should
produce those transcripts to the Schneiders by February 12, 2008. The
Court does not believe that thirty days, the Schneiders requested time
to review those exhibits, is necessary to afford them a fair
opportunity to object. Thus, the Schneiders' motion to preclude
Highland and RBC from introducing its own transcripts is denied without
prejudice to its renewal upon objection at trial.

See, e.g., United States v. Gay, 85 Fed. Appx. 794, 795 (2d Cir. 2004) (referencing a district court's decision to allow a transcript to be used as an aid to the jury but not as an admitted piece of evidence). Highland's and RBC's cross-motions to exclude all transcripts are therefore DENIED to the extent they seek to completely eliminate the use of transcripts at trial.

### D. Attorney-Created Indices

Defendants' Exhibit 308 is an index, created by the Schneiders, which lists all recordings in chronological order. Exhibit 176 is a subset of Exhibit 308, listing recorded conversations from March 12, 2001 through March 14, 2001. The Schneiders seek a ruling that the exhibits are admissible as evidence under Federal Rule of Evidence 1006, or, at the very least, that the exhibits may be used as demonstrative evidence. Highland and RBC oppose the request to admit the indices into evidence and cross-move to exclude them.

Rule 1006, an exception to the best evidence rule, states that "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." Fed. R. Evid. 1006. The Schneiders do not allege that the recordings, illuminated by the use of transcripts, are confusing in content. Indeed, because the content is relatively

straightforward, the recordings will conveniently be examined in court by the jury. See 6 Weinstein's Fed. Evid. § 1006.03 ("Under Rule 1006, charts, summaries, and calculations are only admissible to prove the content of 'voluminous' writings, recordings or photographs that cannot be conveniently examined in court."). Thus, the indices cannot be admitted into evidence under Rule 1006.

The Schneiders nevertheless believe that the indices should be used as demonstrative aids to allow the jury to "more readily understand the dates, times and sequence of the recorded conversations and the participants." (Defs.' Mot. No. 3 at 12.) The Court disagrees for several reasons. First, the indices are more confusing than they are helpful. The Schneiders provide no reason for why it might be helpful for the jury to actually see the file number (e.g. "3.12.19"), the length of the conversation, or the CD from which the recording came (e.g. "17252"). While this information, as an organizational tool, may have helped the Schneiders' counsel prepare for depositions and trial, it is largely insignificant to jurors and may very well confuse them. Second, to the extent that the indices provide some important information, namely the dates of the conversations and the identities of the parties, such information is duplicative as it can be found in the Schneiders' transcripts. Third, through effective lawyering, and without

the need for any indices, the jury should be able to accurately
ascertain the chronology of conversations and events in this
case.[8]  Accordingly, the Schneiders' motion to admit Exhibits 308
and 176 into evidence, or to alternatively use them as
demonstrative aids, is DENIED; RBC's and Highland's cross-
motions seeking to exclude the same are GRANTED.

    E. Exhibit 80C -- Compilation CD

    Highland created a compilation CD of the conversations it
believed to be most relevant to this case.  The Schneiders move
to exclude this CD -- Exhibit 80C -- from evidence because it
has not been properly authenticated under Fed. R. Evid. 901.
The Court agrees.  The February 9, 2005 Declaration of Jamie R.
Welton does not serve to authenticate the compilation, nor does
the Schneiders' lack of objection to the CD during discovery.
Like the indices that the Schneiders' sought to use, the
compilation CD may have been a useful tool for Highland to
organize the recorded conversations for depositions and for
trial preparation.  At trial, however, the jury should hear from
the five authenticated CD's originally produced by RBC, and not
a compilation thereof.  As stated above, because Highland has
already made a compilation CD, the Court does not expect it to

---

[8] For the same reason, the Schneiders' request that Highland and RBC be
barred from referencing taped conversations without identifying the
date, time, and participants in accordance with Exhibit 308 is DENIED.
As Highland states in its opposition papers, the parties are entitled
to try their cases as they see fit.

be overly burdensome for them to now select the files they wish to play from the original CD's. Thus, the Schneiders' motion to exclude Highland's Exhibit 80C is GRANTED.

**V. The Schneiders' Additional Motions in Limine**

A. Motion in Limine No. 2

The Schneiders second motion in limine generally seeks to exclude evidence and comments by any party suggesting that the Schneiders engaged in improper or illegal conduct. The Schneiders wish to preclude Highland and RBC from: (1) suggesting in the presence of jurors that any of the Schneiders or any nonparty associated with the Schneiders violated federal law or state law or regulation, violated McNaughton Apparel Group, Inc. ("McNaughton") internal policy, engaged in illegal or improper insider trading, breached any duties to McNaughton or any other nonparty, or improperly provided, received, or used documents or information; (2) suggesting in the presence of jurors that Leonard Schneider's sale of McNaughton common stock was illegal, improper, breached a duty to McNaughton, or violated any internal policy of McNaughton; (3) using, in the presence of jurors, the terms or labels "securities fraud," "inside information," "inside confidential information," "inside non-public information," "insider trading," "market manipulation," "illegal trading," "illegal inside information," "tippers," "tippees," or similar words or labels; and (4)

41

introducing in evidence any testimony, deposition testimony, or exhibits related to (1), (2), or (3).

Highland opposes the Schneiders' motion in full, stating that, if granted, an "enormous" amount of relevant evidence would be excluded. Specifically, Highland believes that the jury would be deprived of: (1) information showing that the Schneiders wanted to leave McNaughton, which indicates that they intended to sell promptly their promissory notes; (2) the fact that the Schneiders received nonpublic information from McNaughton, which caused them to be willing to sell their notes at a discounted value; (3) corroboration from Peter Boneparth ("Boneparth") that the Schneiders were prepared to sell their notes; (4) evidence showing that testimony by the Schneider children, denying that they intended to sell their notes or authorized Leonard Schneider to engage Rauch on their behalf, is incredulous; and (5) evidence showing that the Schneiders received nonpublic information that the notes would be paid out in full, which caused them to renege on the oral contract.

"[T]he decision whether to admit potentially prejudicial evidence is entrusted to the sound discretion of the district judge and will not be disturbed absent an abuse of discretion." United States v. Gantzer, 810 F.2d 349, 351 (2d Cir. 1987). All evidence tending to demonstrate a defendant's liability, by its nature, will be prejudicial in some respect to the defendant;

42

Rule 403 is designed to exclude only *unfair* prejudice. See Perry
v. Ethan Allen, Inc., 115 F.3d 143, 151 (2d Cir. 1997)
("Although any evidence that tends to establish liability is
prejudicial to the interests of the defendant, the prejudice is
unfair only if the evidence has 'an undue tendency to suggest
decision on an improper basis.'" (quoting Fed. R. Evid. 403
advisory committee's note)). Highland asserts that "[t]he truth
may hurt, but Rule 403 does not make it inadmissible on that
account." (Pl.'s Opp. to Defs.' Mot. No. 2 at 38.) While
Highland's proposition is correct, it fails to expound on the
more nuanced interpretation of Rule 403, namely whether the
Schneiders seek to exclude *unfairly* prejudicial evidence from
the trial.

Highland goes to great lengths -- approximately thirty-
seven pages in its opposition -- to illustrate the fairly
complex factual background in this case. And while there are
documents and communications that tend to support Highland's
recitation of the facts, Highland at no point explains why such
evidence needs to be colored with terms such as "securities
fraud." Nor does Highland explain why, in order to prove its
third-party beneficiary breach of contract claim, it must also
show that the Schneiders committed a securities law violation or
breached a fiduciary duty to McNaughton. As the Schneiders
suggest, the only apparent reason for such trial strategy would

43

be to show the jury "that defendants are bad people. . . ." (Defs.' 2d Reply Mot. No. 2 at 3.) See Empire Gas Corp. v. Am. Bakeries Co., 646 F. Supp. 269, 276 (N.D. Ill. 1986) (finding that testimony showing that the party and its lawyers were "bad people" was prejudicial, confusing, and misleading where the principal issue for the jury to decide whether there was a breach of contract).

Highland lists five broad categories of evidence that would be excluded should the Court grant the Schneiders' motion in limine. In so doing, Highland misconstrues the fairly narrow scope of the Schneiders' motion. For example, Highland claims that it will be precluded from showing that, based upon nonpublic information regarding McNaughton's financial condition, the Schneiders were willing to sell their notes at a discount. To the contrary, the effect of the Court's ruling will not be to conceal this relevant information from the jury, but to help the jury focus on this and other issues central to the case. Highland is thus precluded from coloring its case and wasting the jury's time with misleading and confusing testimony and evidence regarding securities law.[9]

---

[9] The Schneiders' motion appends numerous exhibits and deposition transcripts that purportedly fall into this category of misleading and confusing evidence. The Court does not believe it is necessary to rule on the admissibility of each and every document at this point, and will do so as needed at trial. Nevertheless, the parties should proceed towards trial with the understanding that any evidence related to securities regulations and violations thereof likely will be excluded

44

RBC does not go as far as Highland in its opposition to the Schneiders' motion. It does not seek to prove or use evidence to show that the Schneiders violated securities laws or breached duties to McNaughton and does not oppose the Schneiders' request to preclude use of the terms "securities fraud," "illegal," "market manipulation," or "insider trading." On the other hand, RBC opposes the motion to the extent that it seeks to preclude them from: (1) using evidence that shows that the Schneiders received nonpublic information; and (2) using the terms "material nonpublic information," "inside information," "inside confidential information," and "inside nonpublic information."

First, RBC states that it should be able to use the October 26, 2000 letter from Boneparth to the Schneiders, the November 6, 2000 letter from Amanda Bokman ("Bokman") to Bruce Madnick ("Madnick"), and evidence related to the March 9, 2001 phone call. While the Schneiders "have never contested the admissibility of competent testimony concerning the March 9, 2001 Conversation," (Defs.' Reply Mot. No. 2 at 3), they argue that the October and November letters are irrelevant, presumably under Federal Rule of Evidence 401, because they do not contain any information that might show that the Schneiders entered into

---

upon objection. See, e.g., Pl.'s Ex. 2, McNaughton's Statement of Company policy re Insider Trading (June 1994); Pl.'s Ex. 7, McNaughton Memorandum re Insider Trading (Sept. 29, 2000).

45

an oral contract and reneged on that contract.  In this respect,
the Schneiders' motion fails because:

> Evidence to be relevant does not by
> itself have to prove the ultimate
> proposition for which it is offered;
> nor does it have to make that ultimate
> proposition more probable than not. It
> is enough that the evidence has a
> *tendency* to make a consequential fact
> even the least bit more probable or
> less probable than it would be without
> the evidence. The question of relevance
> is thus different from whether evidence
> is sufficient to prove a point.

Fed. R. Evid. 401 cmt.  Here, the October and November letters
meet the Rule 401 threshold for relevance and thus may be used
at trial.

Second, RBC seeks to use terms such as, *inter alia*,
"material nonpublic information," "inside information," "inside
confidential information," and "inside nonpublic information."
The Schneiders believe that such characterizations of the
evidence are inflammatory and are not necessary to prove any of
Highland's or RBC's claims.  The Court agrees with the
Schneiders that the evidence should not be labeled as "inside"
information.  Given the notoriety of insider trading, mere use
of the term "inside information" may lead a juror to believe
that the Schneiders engaged in improper or illegal conduct.
Thus, any probative value of the term is outweighed by its
misleading nature.  Highland and RBC may, however, use the term
"material nonpublic information" to refer to the information

46

received by the Schneiders. Such a term does not have the same pejorative connotation as "inside" information.

In sum, the Schneiders' motion is GRANTED to the extent it seeks to exclude evidence and testimony related to securities fraud or a breach of fiduciary duty to McNaughton. Further, Highland and RBC may not characterize admissible evidence and testimony as "securities fraud," "illegal," "insider trading," "inside information," and "market manipulation." The motion is DENIED to the extent it seeks to exclude the October 26, 2000 and November 6, 2000 letters and to prevent use of the term "material nonpublic information."

B. Motion in Limine No. 4

The Schneiders seek four rulings in their fourth motion in limine. First, they ask the Court to find that neither Highland nor RBC may adduce testimony by deposition from Max Holmes ("Holmes"), Boneparth, Bokman, Madnick, Brad Cost ("Cost"), Charles Greenman ("Greenman"), James Alterbaum ("Alterbaum"), and Rauch. In light of RBC's response, the Schneiders' request is DENIED without prejudice to its renewal upon objection at trial.[10] Second, the Schneiders state that they "may" seek to

---

[10] The Schneiders' will not, as they claim, be hindered in their trial preparation by this ruling. Instead, based upon RBC's statement that it "intends to use the deposition testimony of these witnesses only in the case that such witnesses are unavailable to testify at trial," (RBC's Opp. to Mot. No. 4 at 2), the Schneiders should prepare for the live testimony of Holmes, Boneparth, Madnick, Cost, Greenman, Alterbaum, and Rauch. As for Bokman, RBC states in a footnote that it listed her as a prospective witness by

47

adduce the testimony by deposition of Ambrecht, Holmes, and Parent, each of whom is listed on RBC's list of prospective live witnesses. If the Schneiders ultimately wish to do so at trial, the Court will rule on the request at that time. Third, the Schneiders assert their right to offer testimony of various Rule 30(b)(6) witnesses should Highland or RBC dispute their right to do so. Highland has not opposed this motion and RBC states that it does not object except on the grounds of relevance and prejudice, which will be separately addressed below. Fourth, the Schneiders ask that RBC be directed to state whether it will produce certain witnesses at trial. RBC has already shown its intent to call some of these witnesses, and the Schneiders have indicated their intent to use the deposition testimony of the others. Further, RBC represents in its opposition that it "expects to further discuss the issues sufficiently prior to trial in order that trial subpoenas can be issued if necessary." (RBC's Opp. to Mot. No. 4 at 7.) As such, the Schneiders' last request is DENIED. The Court expects the parties to discuss the matters raised by the Schneiders without the need for pre-trial intervention by the Court.

---

deposition simply because the Schneiders had not listed her on their witness list. As RBC suggests, the Court will allow for good-faith discussions between the parties as to Bokman's testimony.

48

C. <u>Motion in Limine No. 5</u>

In the alleged oral agreement between the Schneiders and
RBC, Fidelity Management and Research Company ("Fidelity") was
to purchase Leonard Schneider's $23.6 million promissory note
from RBC.  Highland, the purported end-purchaser of the other
seven notes, initiated this lawsuit against the Schneiders in
October 2001, whereas Fidelity is not, and has never been, a
party to this action.  Instead, as part of a settlement
agreement with RBC on May 3, 2004, Fidelity gave RBC an
assignment of its claims (the "Assignment").[11]  The Schneiders
seek a ruling that: (1) RBC cannot assert any claims based upon
the Assignment from Fidelity; (2) RBC and Highland cannot
introduce as evidence or solicit any testimony related to the
Assignment; and (3) RBC and Highland cannot argue that Fidelity
had or believed it had an agreement with Leonard Schneider.[12]

---

[11] The Assignment, which is Exhibit C of the settlement agreement,
assigned, transferred, and conveyed to RBC:

> [A]ll of Fidelity's claims, rights, title, interests
> or causes of action, in contract, tort or fraud,
> legal and equitable, accruing from, arising out of or
> in connection with the proposed purchase or sale of
> certain subordinated promissory notes issued by
> McNaughton Apparel Group, Inc. to Leonard Schneider,
> Leslie Schneider, Susan Schneider and Scott
> Schneider.

(RBC's Opp. to Defs.' Mot. No. 5, Aff. of Jack Yoskowitz,
Ex. 4.)

[12] The Schneiders do not elaborate on the third request in their
memoranda of law.  This request is thus DENIED without prejudice to its
renewal upon objection at trial.

The Court has little hesitation granting the Schneiders'
first request. The law is clear that RBC cannot now add a new
claim, especially in light of the fact that the Schneiders did
not have the opportunity to conduct discovery of Fidelity. See,
e.g., Missigman v. USI Northeast, Inc., 131 F. Supp. 2d 495,
517-18 (S.D.N.Y. 2001) (striking newly asserted claim where
plaintiff had ample time to amend its pleading during pre-trial
discovery and where defendant would be prejudiced because it
could not conduct discovery relevant to the new claim). Indeed,
RBC pointedly states that it does not seek to assert any new
claims. Rather, RBC contends that it "now seeks to introduce
the Assignment in response to Defendants' spurious defense that
RBC is not a real party in interest to its breach of contract
claim and in support of RBC's contention that RBC is entitled to
full benefit of the bargain damages." (RBC's Opp. to Defs.' Mot.
No. 5 at 5.) Thus, the central issue raised by the Schneiders'
motion is whether RBC may introduce the Assignment to clarify
that it is a proper party to this action.

Status as a real party in interest is a procedural matter
governed, in a diversity case, by Rule 17(a) of the Federal
Rules of Civil Procedure. See Brocklesby Transp. V. E. States
Escort Servs., 904 F.2d 131, 133 (2d Cir. 1990). Rule 17(a)
requires that "every action shall be prosecuted in the name of
the real party in interest." Fed. R. Civ. P. 17(a). RBC

contends that the Assignment will show, contrary to the

Schneiders' position,[13] that RBC is a real party in interest, and

---

[13] It is worth noting that the Schneiders' position does not appear to be tenable. "[T]he modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." Fed. R. Civ. P. 17 advisory committee's note to the 1966 amendment. Here, because the entire action hinges upon an alleged oral contract between RBC and the Schneiders, it seems axiomatic that RBC would be entitled to recover from the Schneiders. That Highland may be a third-party beneficiary to that contract does not alter the analysis. See Weniger v. Union Ctr. Plaza Assocs., 387 F. Supp 849, 855 (S.D.N.Y. 1974) (finding that plaintiff was a real party in interest because "[t]he contract sued upon was made in plaintiff's name, and his alone, and the co-brokers are, at best, third party beneficiaries thereto"). Perhaps the Schneiders' argument stems from their misconception, as stated in the pre-trial order and the memorandum of law related to the fifth motion in limine, that one element of third-party beneficiary breach of contract is that the intended beneficiary must prove that it is the only party who may bring a claim for breach of contract. (PTO at 21; Defs.' Reply Mot. No. 5 at 6.) A review of New York law reveals this assertion to be erroneous. As this Court stated in its initial summary judgment opinion, in order to claim third-party beneficiary status, Highland must show: (1) the existence of a valid and binding contract between RBC and the Schneiders; (2) that the contract was intended for Highland's benefit; and (3) that the benefit to Highland was to be sufficiently immediate, rather than incidental. See Highland Capital Mgmt., L.P. v. Schneider, No. 02 Civ. 8098, 2005 WL 1765711, at *19, 2005 U.S. Dist. LEXIS 14912, at *66 (S.D.N.Y. July 26, 2005) (citations omitted). With respect to the second requirement, "New York has 'emphasized when upholding the third party's right to enforce the contract that no one other than the third party can recover if the promisor breaches the contract,' 'or that the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party as by fixing the rate or price at which the third party can obtain services or goods.'" 2005 WL 1765711, at *20, 2005 U.S. Dist. LEXIS 14912, at *68-69 (emphasis added) (quoting Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc., 66 N.Y.2d 38, 45, 485 N.E.2d 208, 212 (1985); see also Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A., No. 03 Civ. 1537, 2003 WL 23018888, at *11, 2003 U.S. Dist. LEXIS 23062, at *32 (S.D.N.Y. Dec. 22, 2003) ("Under New York law, when there is no showing of 'some obligation or duty running from the promisee to the third party beneficiary,' a third party still may enforce a contract when 'no one other than the third party can recover if the promisor breaches the contract.'") (quoting Fourth Ocean Putnam Corp., 66 N.Y.2d at 45, 485 N.E.2d at 212). "Here, both RBC and Highland can potentially recover under the contract," Highland Capital Mgmt., 2005 WL 1765711, at *20, 2005 U.S. Dist. LEXIS 14912, at *69 (emphasis added), because RBC may have had an obligation to Highland. The Schneiders are therefore mistaken in their belief that, if Highland recovers as a third-party beneficiary, "then RBC would lack standing"

51

further that RBC is entitled to full benefit of the bargain damages. This argument must fail. In order to be successful on its own claims, namely for the Schneiders' breach of the duty to negotiate and breach of contract, RBC must show that it entered into an enforceable agreement with the Schneiders. RBC acknowledged this at the summary judgment stage -- "[t]he fact of the matter is that the oral agreement was between RBC and the Schneiders and RBC is entitled to the contractual damages" (RBC's Opp. at 22) -- and in its opposition to the Schneiders' motion in limine -- "the existence of a contract between RBC and Defendants for *all* $69 million of the Notes remains at the core of RBC's contract claim against Defendants." (RBC's Opp. to Defs.' Mot. No. 5 at 5.) Any potential claims that RBC may now have on behalf of Fidelity are irrelevant to this consideration. And even if the Assignment did have any probative value, with no discovery conducted on Fidelity, the prejudice to the Schneiders would be great. As such, RBC may not introduce evidence or question witnesses regarding the Assignment in order to prove that it is a proper party in this action.

---

to recover under the same contract. (Defs.' Mot. No. 5 Reply Memo. of Law at 7.)

## VI. RBC's Additional Motions in Limine

### A. Motion to Exclude Evidence of Compromise and Offers to Compromise Between RBC and Highland

RBC moves pursuant to Rules 403 and 408 of the Federal Rules of Evidence to prevent the Schneiders from offering any evidence or testimony at trial reflecting compromise or offers of compromise between RBC and Highland, including correspondence between attorneys for the parties. RBC asserts that the Schneiders' "only plausible reason [to] introduce this evidence is to confuse and mislead the jury in its determinations with respect to damages and liability." (RBC's Compromise Mot. at 1.)[14]

Highland initially filed a complaint in the District Court of Dallas County, Texas and included RBC as a defendant. Prior to and following that filing, RBC and Highland "negotiate[d] a possible resolution of the potential claims between them . . . ." (RBC's Compromise Mot. at 2.) Ultimately, RBC and Highland entered into a Tolling Agreement, dated May 9, 2002, postponing the statute of limitations on any claims between them until

---

[14] Third-Party Defendant and Third-Party Counter-Claimant RBC Capital Markets Corporation's Memorandum of Law in Support of its Motion In Limine to Exclude Evidence of Compromise and Offers to Compromise Between RBC Capital Markets Corporation and Highland Capital Management, L.P. hereinafter will be cited as "RBC's Compromise Mot."

this action concludes, thereby postponing resolution of any dispute between RBC and Highland.

Rule 408 "embodies the strong federal policy favoring settlement of disputes by precluding the use of settlement-related materials as a means of establishing or disproving liability." Tribune Co. v. Purcigliotti, No. 93 Civ. 7222, 1996 WL 337277, at *1, 1996 U.S. Dist. LEXIS 8433, at *2 (S.D.N.Y. June 19, 1996)(Preska, J.); see also Fed. R. Evid. 408, advisory committee's note. This Rule excludes evidence of compromise or offers of compromise "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." Fed. R. Evid. 408(a). However, the rule does not require exclusion when the evidence is offered for another purpose, such as "proving a witness's bias or prejudice." Fed. R. Evid. 408(b).

RBC argues that there is no permissible use for this evidence under Rule 408. RBC asserts that the Schneiders want to use the settlement offers and negotiations to "create an inference of RBC's liability for the claims brought by Highland against the Schneiders themselves to buttress their claims against RBC." (RBC's Compromise Mot. at 3-4.) In addition, RBC states that the Schneiders seek

to use correspondence "to attempt to show that RBC thought Highland had no claim." (RBC's Compromise Mot. at 4.) Further, RBC claims that the Schneiders intend to use the Tolling Agreement "to attempt to imply that the Defendants' own liability should be reduced as a result of the agreement." (RBC's Compromise Mot. at 5.)

The Schneiders assert that all but two of the documents identified by RBC in its supporting affidavit are not covered by Rule 408 because they do not concern compromise or offers of compromise. (Defs.' Opp. to RBC's Compromise Mot. at 2.) Contrary to the Schneiders' assertion, all of the documents identified by RBC concern compromise or offers of compromise. Although RBC and Highland did not ultimately resolve their dispute through these negotiations, the communications between RBC and Highland still concern offers of compromise. Further, the Tolling Agreement evidences compromise, not a litigation strategy.

Because the documents identified by RBC concern compromise or offers of compromise, Rule 408 governs them. As discussed above, such evidence may not be offered to prove liability or damages. See Fed. R. Evid. 408(a). Evidence relating to compromise or offers of compromise, however, may be offered for other reasons, such as to show

55

a witness's bias or prejudice. See Fed. R. Evid. 408(b).
Most of the documents identified by RBC were communications
between lawyers for RBC and Highland. Therefore, these
communications could not be used to show bias or prejudice
of any of RBC's witnesses. While the affidavit of
Ambrecht, an RBC employee, was attached to the May 6, 2002
letter, (RBC's Compromise Mot., Yoskowitz Aff. Ex. 9),
nothing in the Ambrecht Affidavit could be used to
demonstrate bias because there is no evidence of
inconsistent opinions. (RBC's Reply to Compromise Mot. at
7.)  Further, although the Schneiders assert that "[t]he
jury could certainly conclude that the negotiations and
resulting agreement incentivized RBC to say there was an
agreement on March 14 to sell the Notes," (Defs.' Opp. to
RBC's Compromise Mot. at 6.), there is no evidence to
support this.  To that end, the Schneiders have not
demonstrated that any of these documents evidence bias,
prejudice, or any other permissible purpose under Rule 408.

     RBC also argues that the evidence proffered by the
Schneiders should be excluded as irrelevant and
prejudicial.  This action concerns the Schneiders' alleged
breach of an agreement to sell the notes to RBC.
Discussions between lawyers for RBC and Highland regarding
claims arising from an agreement between RBC and Highland

56

are irrelevant to this action. The evidence identified by RBC is not probative of any relevant issue remaining in this case. Further, the compromise discussions occurred well after the events giving rise to this action. Contrary to the Schneiders' assertion, (Defs.' Opp. to RBC's Compromise Mot. at 17), they would suffer no unfair prejudice by exclusion of this evidence. Rather, there is a substantial risk that the jury will be confused by the legal claims at issue between RBC and Highland, and further confused by the arguments set forth by the lawyers on behalf of RBC and Highland. There is a significant risk that the jury would consider the potential claims between RBC and Highland in determining the claims against the Schneiders. Therefore, RBC's motion to exclude any evidence or testimony at trial reflecting compromise or offers of compromise between RBC and Highland, including correspondence between attorneys for the parties, is GRANTED.

## B. Motion to Exclude Evidence of NASD Arbitration Proceeding and Compromise Between RBC and GRS

RBC moves pursuant to Rules 401, 402, 403, and 408 of the Federal Rules of Evidence to prevent the Schneiders from offering any evidence, testimony, argument, or reference at trial to an arbitration between RBC and Glen

Rauch Securities, Inc. ("GRS") and the subsequent settlement agreement.[15] RBC filed a National Association of Securities Dealers, Inc. ("NASD") arbitration Statement of Claim against GRS in March 2003, asserting claims arising out of the role of GRS and Rauch, as agent of the Schneiders, for selling the notes at issue in this case. RBC and GRS entered into an agreement resolving the dispute and no arbitration hearing was held. In the instant case, the Schneiders moved to compel production of the settlement agreement. Magistrate Judge Gorenstein denied that request under Rule 26(b)(1) of the Federal Rules of Civil Procedure, in an Order dated September 28, 2007. See Order Denying Mot. to Compel, Sept. 28, 2007 (Gorenstein, M.J.). The Schneiders, however, included the Statement of Claim on their proposed exhibit list for trial. Thus, RBC seeks to exclude the Statement of Claim and any other evidence, testimony, or argument regarding the NASD arbitration and settlement agreement from being offered at trial.

RBC argues that any evidence, testimony, or argument regarding the arbitration should be excluded as irrelevant, and even if it is relevant, should be excluded as more

---

[15] Third-Party Defendant and Third-Party Counter-Claimant RBC Capital Markets Corporation's Memorandum of Law in Support of its Motion In Limine to Exclude Evidence of NASD Arbitration Proceeding and Compromise Between RBC and Glen Rauch Securities, Inc. hereinafter will be cited as "RBC's NASD Mot."

prejudicial than probative. There was no adjudication of
the claims or admission of liability arising out of the
arbitration. Similarly, the arbitration related only to
GRS's liability, not the Schneiders. Thus, the arbitration
has no bearing upon the claims in this case. The
Schneiders argue that the Statement of Claim is relevant,
in part, because "[i]t contains an RBC version of the facts
that gave rise to the claims . . . ." (Defs.' Opp. to RBC's
NASD Mot. at 3.) This argument is unpersuasive as the
facts set forth in the Statement of Claim against GRS and
Rauch are irrelevant to the issues in this case.
Additionally, even if it has some probative value, the
danger of unfair prejudice substantially outweighs the
probative value. There is a substantial risk that the jury
would give undue weight to the arbitration proceedings and
be confused by the evidence, testimony, or argument, in
deciding the Schneiders' liability.

        As for the settlement agreement between RBC and GRS,
RBC claims that any evidence, testimony, or argument
regarding this compromise should be excluded under Rule
408, as irrelevant, and as more prejudicial than probative.
As the Court stated above, Rule 408 "embodies the strong
federal policy favoring settlement of disputes by
precluding the use of settlement-related materials as a

means of establishing or disproving liability."

Purcigliotti, 1996 WL 337277, at *1, 1996 U.S. Dist. LEXIS 8433, at *2; see also Fed. R. Evid. 408, advisory committee's note. This Rule excludes evidence of compromise or offers to compromise "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." Fed. R. Evid. 408(a). However, the rule does not require exclusion when the evidence is offered for another purpose, such as "proving a witness's bias or prejudice." Fed. R. Evid. 408(b). Nonetheless, as RBC has noted, the Schneiders assert nothing more than "[a] broad, generalized hope that the settlement agreement (or negotiation of its terms) be relevant . . . ." (RBC's NASD Mot. at 7.)[16] Therefore, "[t]o consider the terms of that settlement in this action would be improper and unjustified." Playboy Enters., Inc. v. Chuckleberry Pub., Inc., 486 F. Supp. 414, 423 (S.D.N.Y. 1980) (holding that plaintiff's settlement with one magazine was not admissible under Rule 408 in litigation with

---

[16] The Schneiders state that "[w]hile defendants have no reason to anticipate this will happen at trial, certainly if Glen Rauch were to testify inconsistently with his prior affirmation and deposition testimony the fact of the settlement or its terms could, in that circumstance, be admissible under Rule 408 as tending to explain such inconsistencies." (Defs.' Opp. to RBC's NASD Mot. at 5.) If these improbable events do occur at trial, then the Court, if necessary, may reconsider its ruling at that time.

60

defendant, another magazine, to show that plaintiff's claim against defendant was unjustified).

In addition, the settlement agreement and any related evidence are not relevant to this case. As Magistrate Judge Gorenstein previously held, the settlement agreement does not contain any admissions of liability by GRS or Rauch, or any other material relating to the dispute. See Order Denying Mot. to Compel, Sept. 28, 2007 (Gorenstein, M.J.). Further, the settlement negotiations and agreement occurred after the events giving rise to this action. There is no showing that the settlement agreement or any related evidence are relevant to this case. Contrary to the Schneiders' assertions, (Defs.' Opp. to RBC's NASD Mot. at 5-6), the Court's determinations apply to not only the settlement agreement itself, but also the fact of settlement and the terms of settlement. Furthermore, under Rule 403, any probative value that the settlement agreement might have is far outweighed by the significant risk of unfair prejudice. There is a significant risk that the jury would infer from the settlement agreement that GRS or Rauch were the wrongdoers and consider that in determining the Schneiders' liability. RBC's motion is GRANTED and the Schneiders are precluded from offering evidence, testimony,

argument, or reference to the NASD arbitration and
subsequent settlement agreement between RBC and GRS.

## C. Motion to Exclude Evidence of an Alternate or Non-Existent Duty or Standard of Care

RBC moves to prevent the Schneiders from offering any
evidence, testimony, or argument regarding any alternate
standard or duty of care, as irrelevant and more misleading
or confusing than probative, pursuant to Rules 401, 402,
and 403 of the Federal Rules of Evidence. (RBC's Duty Mot.
at 1.)[17]  In support of its motion, RBC argues that any
evidence or argument regarding recordkeeping and
documentation of trades is irrelevant to whether there was
an oral agreement to sell the notes.[18]  RBC states that "the
failure to document an *oral* agreement does not make the
existence of such an *oral* agreement any more or less
likely." (RBC Duty Mot. at 6.)  In addition, RBC asserts
that any probative value is outweighed by the risk of
misleading or confusing the jury.

Although RBC admits that it did not document the
agreement, (RBC Duty Mot. at 2, 6), the evidence regarding

---

[17] Third-Party Defendant and Third-Party Counter-Claimant RBC Capital
Markets Corporation's Memorandum of Law in Support of its Motion In
Limine to Exclude Evidence of an Alternate or Non-Existent Duty or
Standard of Care hereinafter will be cited as "RBC's Duty Mot."

[18] Evidence proffered by the Schneiders that addresses these issues
includes the RBC Compliance Manual, Securities and Exchange Commission
("SEC") rules, NASD guidelines, and other trading-related documents, as
well as testimony from the Schneiders' expert, Michael Stupay, and
RBC's Rule 30(b)(6) witnesses.

recordkeeping and trade documentation proffered by the
Schneiders, generally, is relevant. Industry custom and
practices regarding recordkeeping and documentation may be
relevant to the jury's consideration of whether an oral
agreement was reached. As discussed above regarding
Stupay's testimony, even though RBC admits that it did not
document the trade, without industry context, the jury may
have no understanding of the importance, or lack of
importance, of such documentation. Whether RBC violated
these rules and guidelines is not an issue in this case,
but the rules and guidelines are relevant to the central
issue of whether a binding agreement was reached and
provide evidence of industry standards.

The parties dispute what rules and guidelines apply to
the type of transaction at issue in this case. Both sides
may put forth evidence of the practices they contend apply
to the type of transaction at issue and the jury will
decide what weight to give the evidence.

Although this evidence is generally relevant, some of
the evidence proffered by the Schneiders is irrelevant and
should be excluded. The Schneiders identified RBC's entire
Compliance Manual as its Exhibit 7 in the Pre-Trial Order,
as well as selected excerpts from the Compliance Manual as
additional exhibits. (RBC's Duty Mot. at 1 n.1.) The

63

Schneiders' Exhibit 7, which contains the entire Compliance Manual, is excluded because it clearly contains irrelevant internal procedures and would be unnecessarily overwhelming to the jury. The sections separately identified by the Schneiders are generally admissible. However, the Compliance Manual's "Gifts and Gratuities" policy, (Defs.' Opp. to RBC's Duty Mot. at 8 n.5 (quoting RBC 02023)), which the Schneiders seek to admit to show that RBC "was willing to bend over backwards to attempt to please Highland . . . ," (Defs.' Opp. to RBC's Duty Mot. at 8 n.5), is inadmissible. The Schneiders' assertion is irrelevant to the issues in this case and this evidence unnecessarily presents the issue of whether RBC violated a tangential rule, therefore, this evidence would unfairly prejudice the jury and must be excluded. Similarly, the "Customer Complaints" section is irrelevant to the issues in this case and must be excluded. (Defs.' Opp. to RBC's Duty Mot. at 7 (quoting RBC 02078).) If the Schneiders seek to admit evidence of other tangential or irrelevant sections of the Compliance Manual, RBC may renew its objection at trial and the Court will rule at that time. Additionally, the Court reiterates the limitations on Stupay's testimony, which are relevant to this motion as well, as set forth above.

64

RBC argues that under the Rule 403 balancing test, any probative value of the evidence is outweighed by the risk of misleading or confusing the jury. In their Third-Party Complaint, the Schneiders brought several claims, including a claim that RBC was negligent in performing its duties as a registered broker-dealer, and sought indemnification and contribution. In its motion in limine, RBC asserts that if the Schneiders present evidence of company and industry rules and guidelines, the jury likely will be confused between this evidence and the judge's instruction on the legal standard of care in a negligence action. (RBC Duty Mot. at 6-7.) However, after the parties submitted their papers on this motion in limine, the Court issued its summary judgment opinion and dismissed all claims asserted by the Schneiders against RBC. See Highland Capital Mgmt., 2008 WL 152778 at *5-7, 2008 U.S. Dist. LEXIS 3235, at *18-29. Thus, RBC's argument that the jury would be confused between this evidence and the negligence legal standard of care, is irrelevant. Because the Court will not instruct the jury on the negligence legal standard, the risk of confusing or misleading the jury is significantly diminished. Thus, the Schneiders may present this evidence to the jury, subject to the limitations discussed above.

## VII. Highland's Motions

### A. Motion to Take Judicial Notice and Issue Preliminary Instructions

The Second Circuit, by way of a certified question to the New York Court of Appeals, has determined that the promissory notes at issue in this case are securities under N.Y.U.C.C. § 8-102(a)(15), thereby rendering the Statute of Frauds inapplicable to the purported oral agreement for the notes. Highland asks the Court, pursuant to Federal Rule of Evidence 201, to take judicial notice that the promissory notes at issue in this case are securities,[19] and that oral agreements for the sale of securities are binding under New York law. This request is DENIED because the Second Circuit's ruling is the law of the case and does not require judicial notice. See United States v. Cirami, 563 F.2d 26, 32 (2d Cir. 1977) ("When an appellate court has once decided an issue, the trial court, at a later stage in the litigation, is under a duty to follow the appellate court's ruling on that issue. This is what is meant by 'law of the case.'") (internal citations omitted). To that

---

[19] In addition to the applicable state law, Highland contends that the notes are securities under federal law, namely 15 U.S.C. § 78c(a)(10). Nothing in the record supports this assertion.

end, the Court intends to instruct the jury as to the law of the case at the appropriate time.[20]

B. Motion In Limine No. 1

In this motion in limine, Highland seeks an order prohibiting testimony by Barbara Bailey ("Bailey"), Tyler Lenane ("Lenane"), Nanci Weisbord ("Weisbord"), Allison Caire Aucoin ("Aucoin"), and Lawrence Halperin ("Halperin"). Highland claims that because these individuals were not disclosed by the Schneiders during discovery pursuant to Federal Rule of Civil Procedure 26, it would be prejudicial to Highland if they testified at trial. As to Bailey, Lenane, Weisbord, and Aucoin, who were listed as potential witnesses by the Schneiders in the pre-trial order to support the authenticity of the transcripts and indices, the Court is confident that its determination of the Schneiders' motion in limine No. 3 largely resolves the issue. To the extent that Highland wishes to continue to challenge the accuracy of the transcripts at trial, the Schneiders should, as a matter of

---

[20] The Court's preliminary instructions to the jury are likely to be succinct in anticipation of the evidence to be presented. Further, in order to assuage the Schneiders' apprehension that Highland's proposed instruction on this issue "impermissibly minimizes important issues in this case and improperly suggests the absence of a dispute as to whether any oral agreement was reached . . ." (Defs.' Opp. to Pl.'s Jud. Not. Mot. at 10), the Court notes that the instruction will be given evenhandedly, within the context of the central issues in the case.

67

fairness, be able to call these witnesses to describe the methodology by which the transcripts were prepared.

Halperin, an outside attorney to RBC in 2001, "became known to defendants during the discovery phase of this action, through RBC's production of documents . . . ." (Defs.' Opp. to Pl.'s Mot. No. 1 at 1.) The Schneiders contend that Highland also became aware of Halperin at that time, and would thus not be prejudiced by his testimony at trial. Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); Rhone v. United States, No. 04 Civ. 5037, 2007 WL 3340836, at *8 n.6, 2007 U.S. Dist. LEXIS 83322, at *24 n.6 (S.D.N.Y. Nov. 9, 2007) (Leisure, J.) (stating that evidence preclusion under Rule 37(c)(1) is a drastic remedy and should be used with caution); Ebewo v. Martinez, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) (Koeltl, J.) ("The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence."). First, it does not appear that the Schneiders failed to satisfy Rule 26(a) or (e). The Schneiders obviously did not know about Halperin at the

68

initial disclosure stage of this case. Further, under Rule 26(e), the initial disclosures must be supplemented "if the additional or corrective information *has not otherwise been made known to the other parties during the discovery process* or in writing." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). Second, even if the Schneiders should have amended their disclosures, any failure to do so was harmless. Highland received documents relevant to Halperin and participated at a deposition in which these documents were used. Moreover, Highland will be aligned at trial with RBC, the party that originally produced the information related to Halperin. Thus, any prejudice to Highland is *de minimis*. Highland's motion in limine No. 1 is DENIED.

## CONCLUSION

The foregoing hereby constitutes the decisions of the Court on all currently pending motions in limine in this action. The parties are to appear for trial on February 19, 2008 at 9:30 a.m.

**SO ORDERED.**

New York, New York
January **31**, 2008

_____
U.S.D.J.

COPIES MAILED
TO COUNSEL OF RECORD ON $\cancel{24}$ 1/31/08

70