UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8 20 08

HIGHLAND CAPITAL MANAGEMENT,
L.P.,

    Plaintiff,

        - against -

LEONARD SCHNEIDER, LESLIE
SCHNEIDER, SCOTT SCHNEIDER, and
SUSAN SCHNEIDER,

    Defendants.

**OPINION AND ORDER**

02 Civ. 8098 (PKL)

LEONARD SCHNEIDER, LESLIE
SCHNEIDER, SCOTT SCHNEIDER, and
SUSAN SCHNEIDER,

    Third-Party Plaintiffs,

        - against -

RBC CAPITAL MARKETS CORPORATION
f/k/a/ RBC DOMINION SECURITIES
CORPORATION,

    Third-Party Defendant and
    Third-Party Counterclaimant.

## Appearances

LACKEY HERSHMAN, L.L.P.
Paul B. Lackey, Esq.
Jamie R. Welton, Esq.
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219

Attorneys for Plaintiff

TROUTMAN SANDERS L.L.P.
Alvin M. Stein, Esq.
Katherine C. Ash, Esq.
405 Lexington Avenue
New York, New York 10174

Attorneys for Defendants/Third-Party Plaintiffs

SEWARD & KISSEL L.L.P.
Jack Yoskowitz, Esq.
Michael J. McNamara, Esq.
One Battery Park Plaza
New York, New York 10004

Attorneys for Third-Party Defendant/Third-Party
Counterclaimant

**LEISURE, District Judge:**

Following a jury trial on the merits, the Court

entered judgment against defendants Leonard Schneider

("Leonard"), Leslie Schneider ("Leslie"), Scott Schneider

("Scott"), and Susan Schneider ("Susan") (collectively

"defendants" or "the Schneiders") awarding damages to

plaintiff Highland Capital Management, L.P. ("Highland")

and third-party defendant and counterclaimant, RBC Capital

Markets Corporation, formerly known as RBC Dominion

Securities Corporation ("RBC").[1]  Defendants now bring a

motion for judgment as a matter of law, or in the

alternative, for a new trial.  The parties also request

that the Court amend the judgment -- plaintiffs bring a

joint motion to correct the judgment and defendants bring a

motion to alter or amend the judgment.  For the following

reason, defendants' motions are DENIED and plaintiffs'

motion is GRANTED.

## BACKGROUND

Highland brought this action against defendants for

their refusal to sell certain promissory notes (the

"Notes"), valued at $69 million, to Highland and RBC.  The

---

[1] Prior to the start of trial, the Court, after consulting with the
parties, began referring to RBC as a "plaintiff" to avoid confusing the
jury because only claims against the Schneiders remained after the
Court's summary judgment decision.  The Court will continue with this
practice in this Order and Opinion.  Thus, Highland and RBC are
collectively referred to as "plaintiffs".

1

factual background of this case is explained in detail in the Court's July 26, 2005 and January 16, 2008 summary judgment opinions, familiarity with which is assumed.[2] See Highland Capital Mgmt., L.P. v. Schneider, 533 F. Supp. 2d 345, 347-50 (S.D.N.Y. 2008); Highland Capital Mgmt., L.P. v. Schneider, No. 02 Civ. 8098, 2005 WL 1765711, at *1-9 (S.D.N.Y. July 26, 2005). Any additional relevant facts are included in the discussion below.

Following this Court's determination of the parties' pre-trial motions, RBC's two remaining claims at trial were for (1) breach of duty to negotiate, and (2) breach of oral contract to sell the promissory notes. Both claims were premised upon the allegation that defendants, through their agent, Glen Rauch ("Rauch") or Glen Rauch Securities ("GRS"), entered into an agreement to sell the Notes to RBC. Additionally, Highland claimed that it was an intended third-party beneficiary of the purported contract between defendants and RBC.

Following a three-week trial, the jury returned a verdict in favor of plaintiffs on March 6, 2008. The

[2] Following this Court's 2005 summary judgment opinion, the Second Circuit certified a question to the New York Court of Appeals and subsequently vacated and remanded this Court's judgment with respect to three of Highland's claims. See Highland Capital Mgmt., L.P. v. Schneider, 485 F.3d 690 (2d Cir. 2007); Highland Capital Mgmt., L.P. v. Schneider, 460 F.3d 308 (2d Cir. 2006); see also Highland Capital Mgmt., L.P. v. Schneider, 8 N.Y.3d 406, 834 N.Y.S.2d 692, 866 N.E.2d 1020 (2007).

2

Court's original judgment was entered on March 11, 2008 and an amended judgment, which corrected typographical errors and identified defendants by name, was entered on March 17, 2008 (collectively the "Judgment"). The Judgment awards $22,456,757.50 to Highland and $17,710,817.33 to RBC, as well as pre-judgment interest from June 19, 2001 through March 10, 2008.

On March 25, 2008, plaintiffs filed a joint motion to correct the judgment, which defendants oppose. On March 26, 2008, defendants filed a motion to alter or amend the judgment, as well as a motion for judgment as a matter of law, or in the alternative, for a new trial, which plaintiffs oppose.

## DISCUSSION

I. Defendants' Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial

A. Motion for Judgment as a Matter of Law

1. Standard Under Rule 50(b)

Defendants move for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). The Court may properly grant a motion for judgment as a matter of law under Rule 50(b) "only if there is 'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise

3

and conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [the moving party].'" Stratton v. Dep't for the Aging for the City of New York, 132 F.3d 869, 878 (2d Cir. 1997) (quoting LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 429 (2d Cir. 1995)); see also Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 233 (2d Cir. 2000).

In ruling on a Rule 50(b) motion, the court is "required to 'consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence. The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury.'" LeBlanc-Sternberg, 67 F.3d at 429 (quoting Smith v. Lightning Bolt Prods., Inc., 861 F.2d 363, 367 (2d Cir. 1988)). "[W]hatever its own view of the facts may [be], the court [is] not entitled to substitute its view for adequately supported findings that were implicit in the jury's verdict." Id. at 430.

## 2. Sufficiency of the Evidence

The Court begins by rejecting defendants' arguments that they are entitled to judgment as a matter of law because the jury's verdict was not supported by the evidence. The Court's review of the record indicates that there is substantial evidence in support of the verdict.

### a. Agreement to Sell the Notes

Defendants argue that plaintiffs did not present sufficient evidence for "a reasonable jury determination that the Schneiders and RBC entered into an oral agreement for the sale of Notes." (Defs.' Memo. of Law at 11.) In support of their assertion, defendants cite testimony from Rauch and each of the defendants, as well as taped telephone conversations between Rauch and RBC. Defendants further contend that testimony presented by plaintiffs was inconsistent regarding the existence of a contract and RBC's failure to record the agreement.

Defendants have failed to demonstrate that the jury's finding that a contract existed was not adequately supported by evidence. Despite defendants' testimony in support of their position, their credibility was challenged more than once during the course of the trial. Such challenges included impeachment through the introduction of prior deposition testimony, as well as contradictory

evidence presented by plaintiffs. Several of plaintiffs'
witnesses, including Peter Parent ("Parent"), Ken Ambrecht
("Ambrecht"), and Max Holmes ("Holmes"), testified that an
agreement was reached during an untaped telephone call on
March 14, 2001. Plaintiffs presented additional evidence
in support of this testimony, such as evidence regarding
RBC's actions following the agreement and Rauch's letter to
Leonard regarding payment of a fee for his work on the
transaction. Plaintiffs presented sufficient evidence that
there was "a meeting of the minds, demonstrating the
parties' mutual assent and mutual intent to be bound."
Oscar Prods., Inc. v. Zacharius, 893 F. Supp. 250, 255
(S.D.N.Y. 1995). A reasonably jury could infer that
defendants and RBC entered into an agreement for the sale
of the Notes.

### b. Essential Terms

Defendants contend that there was insufficient
evidence of a meeting of the minds on essential terms of
the agreement between defendants and RBC. Specifically,
defendants argue that representations, warranties, and
conditions were essential to the agreement. (Defs.' Memo.
of Law at 14; Defs.' Reply at 25.) Defendants, however,
have failed to show that there was a lack of evidence
presented on this issue from which a reasonable jury could

6

conclude that there was a meeting of the minds on essential terms. Plaintiffs presented witnesses, including Parent and Ambrecht, who testified that "size and price" were the only essential terms of this agreement. Based on the evidence, the jury could reasonable conclude that there was a meeting of the minds regarding all essential terms of the agreement. See, e.g., Cinema N. Corp. v. Plaza at Latham Assocs. & Hoyt's Cinema, 867 F.2d 135, 140 (2d Cir. 1989)

## c. Oral Agreement

Defendants argue that the evidence demonstrated that "the parties intended that no agreement would be reached until it was reduced to a written agreement." (Defs.' Memo. of Law at 15.) The factors to be considered in determining whether the parties intended to be bound absent a written agreement are: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1986). Defendants have failed to meet their burden of showing that no reasonable jury could

find that a binding agreement to sell the Notes could be made orally.

Regarding the first factor, defendants contend that the January 5, 2001 Letter Agreement between GRS and RBC, along with evidence that RBC's representatives acknowledged that the transaction required a written agreement, precluded the jury from finding that there was an oral agreement. In reference to a possible resale of the Notes, the Letter Agreement between GRS and RBC states that "any such transaction is subject to definitive documentation in compliance with applicable law. . . ." (Pls.' Exh. 20.) However, plaintiffs presented evidence that the Letter Agreement merely indicated that the trade would ultimately be documented, and not that documentation was required to establish the agreement. Gerald A. Guild ("Guild"), plaintiffs' expert, testified regarding industry custom and practice, (Trial Tr. at 607:5-608:24), and Holmes, the drafter of the Letter Agreement, testified regarding his purpose for including the language and his interpretation of it. (Trial Tr. at 363:21-364:19.)

Defendants contend that the second factor also suggests that the parties did not intend to be bound absent a writing because there was no performance. (Defs.' Memo. of Law at 18.) Plantiffs, however, presented evidence from

which the jury could reasonable conclude that RBC had
partially performed under the agreement, including taking
steps to complete the transaction as a riskless principal,
such as hiring a lawyer. (Trial Tr. at 158:12-18.)
Regarding the third factor, as discussed above, plaintiffs
presented evidence that the parties had agreed on the
essential terms of the contract. Finally, regarding the
fourth factor, plaintiffs presented evidence, such as
Guild's testimony, from which the jury could reasonably
conclude that this was not the type of agreement that was
usually committed to writing. (Trial Tr. at 607:10-608:24,
617:21-618:2.) Thus, there was sufficient evidence from
which the jury could reasonably conclude that a binding
agreement to sell the Notes could be made orally.

### d. Intended Third-Party Beneficiary

Defendants assert that there was insufficient evidence
to support Highland's claim as an intended third-party
beneficiary of the agreement between defendants and RBC.
As the Court previously stated, "[i]n order to claim third
party beneficiary status, [Highland] must allege: (1) the
existence of a valid and binding contract between other
parties, (2) that the contract was intended for [its]
benefit and (3) that the benefit to [it] is sufficiently
immediate, rather than incidental, to indicate the

9

assumption by the contracting parties of a duty to compensate [it] if the benefit is lost." Highland Capital Mgmt., 2005 WL 1765711, at *19 (internal quotations omitted). An intended third-party beneficiary's identity need not be expressed in the agreement, but the parties to the contract must demonstrate their intention to benefit a third party in the agreement. See McPheeters v. McGinn, Smith & Co., Inc., 953 F.2d 771, 773 (2d Cir. 1992); Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 573 (2d Cir. 1991); In re Gulf Oil / Cities Serv. Tender Offer Litig., 725 F. Supp. 712, 733 (S.D.N.Y. 1989).

Defendants assert that Highland failed to present sufficient evidence to support the jury's finding that it was an intended third-party beneficiary. They claim that Highland presented no evidence that defendants and RBC recognized that the sale was to benefit a customer and that RBC actually sought to hide its agreement with Highland from defendants. (Defs.' Reply at 45-46.) Considering the record, a reasonable jury could conclude that Highland was an intended third-party beneficiary of the agreement between defendants and RBC. Highland did not have to show that defendants knew Highland's identity, but only that the contract evidenced RBC's and defendants' intention to benefit a third party. Highland presented evidence that

10

RBC was acting as a riskless principal and that Rauch was aware that RBC would immediately trade the Notes to a buyer.

### e. Agents' Authority

Defendants contend that there was insufficient evidence to establish that Rauch had actual or apparent authority to bind defendants and that Leonard had actual or apparent authority to bind Leslie, Susan, or Scott. Actual authority is conferred, explicitly or impliedly, from the principal to the agent. See Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. Kommanditgesellschaft v. Republic of Romania, 123 F. Supp. 2d 174, 185-86 (S.D.N.Y. 2000) (Sprizzo, J.). An agent has apparent authority if "(1) [the] principal was responsible for the appearance of authority in the agent to conduct the transaction in question, and (2) the third party reasonably relied on the representations of the agent." Highland Capital Mgmt., 2005 WL 1765711, at *10 (internal quotations and citations omitted).

Defendants assert that plaintiffs presented no evidence that Rauch was authorized to sell the Notes on behalf of defendants and that he was, at most, authorized to negotiate on their behalf. (Defs.' Reply at 32.) Defendants argue that the jury could not reasonably

11

conclude that defendants created the appearance of
authority when the Letter Agreement required that
defendants approve any sale. (Defs.' Reply at 32-33.) They
also claim that there was no evidence that defendants did
anything to give the appearance to RBC that Rauch had the
authority to enter into an agreement on their behalf.
(Defs.' Reply at 35-36.)

Contrary to defendants' assertion, there was
sufficient evidence that Rauch had authority to bind
defendants. Plaintiffs presented evidence that the Letter
Agreement did not exclude Rauch from having the authority
to bind defendants. Additionally, they presented evidence
demonstrating that it was industry custom and practice for
brokers, like Rauch, to routinely enter into binding
agreements on behalf of their clients. Plaintiffs
presented evidence that Rauch, who was the family's broker
for a number of years, considered bids, including "firm"
offers, for the Notes on behalf of defendants in dealing
with RBC. (Trial Tr. at 521:5-19, 525:4-7.) Indeed, there
was evidence that defendants directed that RBC communicate
with defendants only through Rauch. (Pls.' Exh. 50.) Thus,
the jury reasonably concluded that Rauch had the authority
to bind defendants to a sale of the Notes.

Similarly, plaintiffs presented sufficient evidence at trial for the jury reasonably to conclude that Leonard was the agent of Leslie, Susan, and Scott. Testimony from defendants and Rauch indicated that Rauch routinely communicated with Leonard regarding trades for Leslie, Susan, and Scott. Regarding the Letter Agreement, Rauch stated that Leonard authorized him to sign on behalf of Leonard, Leslie, Susan, and Scott. (Trial Tr. at 499:4-7.) Rauch also stated that Leonard "usually spoke for his children." (Trial Tr. at 491:10.) Additionally, attorney James Alterbaum represented all defendants and approved the Letter Agreement. Finally, plaintiffs introduced Leonard's deposition testimony to impeach his testimony at trial on this issue. Therefore, plaintiffs put forth sufficient evidence for the jury to find that Rauch had authority to bind defendants and that Leonard had authority to bind Leslie, Susan, and Scott.

In light of the record, the Court finds that the jury's verdict was supported by substantial evidence and defendants' motion for judgment as a matter of law must be denied.

B. Motion for a New Trial

"In ruling on a Rule 59 motion a court makes the same type of inquiry as on a motion for judgment as a matter of

law, but imposes a less stringent standard." Fowler v. New York Transit Auth., No. 96 Civ. 6796, 2001 WL 83228, *2 (S.D.N.Y. 2001) (citing Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 970 (2d Cir. 1987); Newmont Mines Ltd. v. Hanover Ins. Co., 784 F.2d 127, 132 (2d Cir. 1986)). "The decision whether to grant a new trial on the ground that the verdict was against the weight of the evidence is committed to the sound discretion of the district court." U.S. E. Telecomms., Inc. v. U.S. W. Commc'ns Servs., Inc., 38 F.3d 1289, 1301 (2d Cir. 1994) (internal quotations and citation omitted). In exercising its discretion, "[a] trial court should grant such a motion when convinced that the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice," Katara, 835 F.2d at 970, or the verdict is "against the weight of the evidence." U.S. E. Telecomms., Inc., 38 F.3d at 1301. "While the Court need not necessarily weigh the evidence in the light most favorable to the non-moving party, disagreement with the verdict alone is insufficient to justify ordering a new trial." Muller v. Costello, 997 F. Supp. 299, 302 (N.D.N.Y. 1998) (citing Mallis v. Bankers Trust Co., 717 F.2d 683, 688-89 (2d Cir. 1983)).

### 1. Damages

In support of their motion for a new trial, defendants make various challenges to the damages awards, claiming that the damages were inconsistent with controlling law, unsupported by evidence, the result of errors in the jury charge, and clearly excessive. (Defs.' Memo. of Law at 28.)

#### a. General Damages Award

First, the Court addresses defendants' argument that the general damages award was contrary to controlling law and not supported by the evidence. Damages for breach of contract should place the aggrieved party in the same economic position it would have been in had the breaching party fully performed. See Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc., No. 01 Civ. 3796, 2005 WL 447377, at *18 (S.D.N.Y. Feb. 24, 2005) (Leisure, J.); see also Contemporary Mission, Inc. v. Bonded Mailings, Inc., 671 F.2d 81, 84 (2d Cir. 1982). A plaintiff need not prove damages with mathematical precision, but must demonstrate damages with reasonable certainty. See, e.g., Exodus Partners, LLC v. Cooke, No. 04 Civ. 10239, 2007 WL 120053, at *14 (S.D.N.Y. Jan. 17, 2007). In this case, the jury was asked to "calculate damages by determining the difference between the contract price for the Notes that the parties agreed to and the

value of the Notes at the time of the breach." (Jury Charge
at 55.)

Defendants contend that the jury's damages award
improperly takes into account post-breach events;
specifically, the Jones-McNaughton merger and the
subsequent payment on the Notes at face value to
defendants.[3] Defendants also argue that the only evidence
of market value at the time of the breach was Highland's
52.5 cent offer to RBC. Defendants contend that any
material nonpublic information that they possessed at the
time of the breach was uncertain and should have no bearing
on the Notes' market value.

Assessing damages is a factual inquiry for the jury.
See Ismail v. Cohen, 899 F.2d 183, 186 (2d Cir. 1990) ("It
is well settled that calculation of damages is the province
of the jury."). Here, there was sufficient evidence for
the jury to conclude that the value of the Notes at the
time of the breach was the full face value. The jury could
reasonably conclude that the material nonpublic information
possessed by defendants impacted the value of the Notes at

_____

[3] There was evidence presented at trial that in March 2001 defendants
obtained material nonpublic information regarding a potential deal
between the issuer of the Notes, McNaughton Apparel Group, Inc.,
formerly known as Norton McNaughton, Inc. ("McNaughton") and Jones
Apparel Group ("Jones"). On April 16, 2001, it was publicly announced
that Jones had agreed to purchase McNaughton. The Notes were paid out
in full on June 19, 2001, with defendants receiving $69 million plus
interest.

16

the time of the breach.  Similarly, a reasonable jury calculating damages could conclude that it was irrelevant that the individuals who were actually negotiating the agreement did not possess this material nonpublic information. (Defs.' Reply at 12.)  The jury's general damages award is supported by law and the evidence presented at trial, and provides reasonable compensation for defendants' breach.

### b. Jury Charge

Defendants contend that the Court's failure to include certain of their proposed jury instructions allowed the jury to incorrectly calculate damages, resulting in substantial error.  The Court is granted discretion in the wording of jury instructions, "so long as the instructions, taken as a whole, do not mislead the jury as to the proper legal standard, or . . . adequately inform the jury of the law." See Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 106-07 (2d Cir. 2001) (internal quotations omitted). "A jury instruction is erroneous if the instruction misleads the jury as to the proper legal standard, or it does not adequately inform the jury of the law, but such an error will not be grounds for reversal unless taken as a whole, the jury instructions gave a misleading impression or inadequate understanding of the law." Owen v. Thermatool

Corp., 155 F.3d 137, 139 (2d Cir. 1998) (internal quotations omitted). The jury was instructed to calculate damages at the time of the breach, based on the difference between the contract price and the value of the notes at the time of the breach. Considering the charge as a whole, the Court's wording adequately informed the jury of the law and was not misleading.

### c. Benefit of the Bargain Damages

Defendants argue that the jury improperly awarded damages to RBC for Leonard's $23.6 million Note, which was to be sold to Fidelity. In ruling on the parties' motions in limine, the Court held that RBC could not assert a claim on behalf of Fidelity. See Highland Capital Mgmt., L.P. v. Schneider, 551 F. Supp. 2d 173, 194-95 (S.D.N.Y. 2008) (Leisure, J.). The jury's award here, however, is not in contravention of the Court's in limine ruling. RBC's breach of contract claim was for the full $69 million of Notes, which was separate from any claims brought by third parties like Highland and Fidelity. Thus, the jury's award was not erroneous.

### d. Consequential Damages

In addition to general damages, the jury awarded RBC $5 million in consequential damages for lost profits stemming from defendants' breach. Defendants assert that

the award of consequential damages was contrary to law

because "there was no evidence from which the jury could

rationally have found that the loss of future Fidelity

business, or the loss of profits from any such future

business, was within the contemplation of the Schneiders

(or Rauch) at the time that the alleged oral agreement was

made." (Defs.' Memo. of Law at 43.)   Additionally,

defendants claim that RBC failed to prove consequential

damages with sufficient certainty.

"[A] party may recover lost profits if (1) its alleged

lost profits were caused by the breach; (2) the 'damages

were fairly within the contemplation of the parties' when

contracting; and (3) the damages can be proven with a

reasonable certainty." Merlite Indus., Inc. v. Valassis

Inserts, Inc., 12 F.3d 373, 376 (2d Cir. 1993) (quoting

Kenford Co. v. County of Erie, 67 N.Y.2d 257, 261, 502

N.Y.S.2d 131, 132 (1986)).

The jury's award of consequential damages was

supported by the evidence and was not contrary to law.

First, RBC presented evidence at trial for the jury to

reasonably conclude that RBC's lost profits were caused by

defendants' breach.   Such evidence included taped telephone

conversations between personnel for RBC and Fidelity, as

well as testimony from RBC's Parent and Highland's Mark

Okada, which indicated that Fidelity and Highland ceased doing business with RBC as a result of RBC's failure to deliver defendants' Notes. Second, RBC presented evidence for the jury reasonably to conclude that lost profits were within the contemplation of the parties when the agreement was made. RBC presented evidence, such as taped telephone conversations and testimony regarding Rauch's experience in the industry, from which the jury could reasonably conclude that Rauch, acting as defendants' agent, knew RBC would be selling defendants' Notes to a third party and that such lost profits were a foreseeable consequence of defendants' breach. Third, the jury could rationally conclude that RBC proved lost profits damages with reasonable certainty. Expert witness Guild testified extensively on this topic and discussed his calculation of lost profits based on transactions between RBC and Fidelity, and RBC and Highland. Thus, the jury's award of consequential damages for lost profits was not contrary to law, was supported by evidence, and is not grounds for a new trial.

### e. RBC-Rauch Settlement

RBC filed a National Association of Securities Dealers, Inc. ("NASD") arbitration Statement of Claim against GRS in March 2003, asserting claims arising out of the role of GRS and Rauch in selling defendants' Notes to

RBC. RBC and GRS settled the dispute prior to an arbitration hearing being held. Prior to trial, defendants moved to compel production of the settlement agreement. Magistrate Judge Gorenstein denied that request under Federal Rule of Civil Procedure 26(b)(1), in an Order dated September 28, 2007, indicating that consideration of the request, as it relates to any reduction in RBC's damages, would be more appropriate following trial. See Highland Capital Mgmt., L.P. v. Schneider et al., No. 02 Civ. 8098, slip op. at 3 (S.D.N.Y. Sept. 28, 2007) (Gorenstein, M.J.). RBC filed a motion in limine to exclude defendants from offering any evidence, testimony, argument, or reference at trial regarding the NASD arbitration or the settlement with GRS. The Court granted RBC's motion and defendants were precluded from offering evidence, testimony, argument, or reference to the arbitration and subsequent settlement.

Now, defendants ask the Court to direct RBC "to produce the settlement agreement or disclose the amount of the settlement, and the amount paid by Rauch must be subtracted from RBC's judgment. . . ." (Defs.' Memo. of Law at 49.) In opposition, RBC argues that because this issue was not raised by defendants at trial, it is improperly raised in defendants' post-trial motion. (RBC Opp. at 42 n.21.) RBC's assertion is unfounded. Defendants

repeatedly raised the arbitration and settlement issue before trial. In his Order, Magistrate Judge Gorenstein stated that "[c]ases considering such an argument have typically determined that the settlement amount should be disclosed only following trial, and we follow that same approach here." Highland Capital Mgmt., slip op. at 3. Therefore, the Court must consider whether RBC should be directed to produce the settlement agreement or amount and whether to subtract that amount from RBC's judgment.

Defendants fail to provide any legal support for their assertion that "the damages awarded to RBC must be reduced by the amount of the GRS-RBC settlement." (Defs.' Reply at 19.) Courts have noted that section 15-108 of New York's General Obligations Law ("GOL") may permit disclosure, after trial, to a non-settling defendant of a settlement amount between plaintiff and a settling party. See ABF Capital Mgmt. v. Askin Capital, No. 96 Civ. 2978, 2000 WL 191698, at *3 (S.D.N.Y. Feb. 10, 2000). Section 15-108, however, applies only in tort actions. See, e.g., Bauman v. Garfinkle, 235 A.D.2d 245, 245, 652 N.Y.S.2d 32, 33 (1st Dep't 1997) (citing Bankers Trust Co. v. Lee Keeling & Assocs. Inc., 20 F.3d 1092, 1099 (10th Cir. 1994) (applying New York law)). At trial, plaintiffs only asserted

contract claims. Accordingly, section 15-108 does not apply here.

GRS and Rauch were never parties in this action. The jury found that defendants were liable to plaintiffs for certain damages. Although Rauch acted as defendants' agent, his own liability was never before the jury and there was no finding that he breached any obligation to plaintiffs on his own behalf. Further, Magistrate Judge Gorenstein, after reviewing the settlement agreement *in camera*, stated that it includes "no admissions of liability or any other material relating to the merits of the dispute." Highland Capital Mgmt., slip op. at 3. The settlement between RBC and GRS is separate from the jury's award and has no bearing on RBC's damages in this action. Defendants' request to have the Court direct RBC to disclose the settlement agreement or amount is denied.

## 2. Substantial Errors Arguments

Defendants also assert that the Court committed substantial errors which require the Court to grant a new trial. Defendants take issue with the jury charge, the verdict form, and certain evidentiary rulings. (Defs.' Memo. of Law at 50.)

## a. Jury Charge

Defendants contend that a new trial is required because the Court failed to instruct the jury properly on the law regarding oral agreements. Specially, defendants argue that the Court's instructions were improper on the following subjects: plaintiffs' burden to prove the existence of a binding oral agreement; defendants' intent to be bound absent a writing; the instruction that "an oral agreement for the sale of securities is binding and enforceable under New York law" made the charge confusing and incorrect; and the Court provided little guidance on the factors for the jury to consider whether there was a binding oral agreement.

The Court properly instructed the jury that plaintiffs "must show that there was a meeting of the minds between Rauch and RBC on the essential terms of the contract, demonstrating mutual assent and a mutual intent to be bound." (Jury Charge at 40, 45.) Because it is the law of the case that the Notes at issue are securities, Highland Capital Mgmt., L.P. v. Schneider, 8 N.Y.3d 406, 834 N.Y.S.2d 692, 866 N.E.2d 1020 (2007), the Court properly instructed the jury regarding oral agreements for the sale of securities. The Court adequately instructed the jury regarding whether a party intends to be bound absent a

writing by stating that "if the parties contemplate a
formal written contract and that they will not be bound
until such contract is signed, there is no binding
agreement absent such contract." (Jury Charge at 40-41.)
Although the Court did not enumerate the four Winston
factors in the instructions on breach of contract, but did
so in the instructions on breach of a preliminary
agreement, the instructions, taken as a whole, properly
instructed the jury on how to determine whether an oral
agreement had been reached.  Further, there was no
indication that the jury was confused by the instructions;
the jury's only note during deliberations was a request for
a copy of the entire jury charge.  In sum, the Court's
instructions were neither unclear nor incorrect as a matter
of law.[4]

### b. Verdict Form

Defendants argue that the verdict form was deficient,
asserting that it was "doomed to confuse the jury" because
the form did not ask the jury to decide whether each
defendant had entered into a binding agreement to sell

---

[4] Defendants also argue that the jury charge was erroneous because it
declined to include defendants' proposed language regarding objective
manifestation of the parties' intent to be bound to a contract. (Defs.'
Memo. of Law at 62.)  The Court's instruction that RBC was required to
prove that the parties had "a meeting of the minds" on essential terms
and demonstrated "mutual assent and mutual intent to be bound" was a
proper recitation of the law and was not substantial error. (Jury
Charge at 40, 45.)

Notes. The verdict form asked the jury: "Do you find that plaintiff RBC is entitled to recover damages from defendants for breach of contract?" The form then listed each of the defendants by name and provided a space for the jury to check "yes" or "no". Similar language and a similar format were used with respect to Highland's claim as well.

The jury was provided the verdict form only after the Court's extensive instructions. The Jury Charge and the verdict form required the jury to consider numerous hurdles, including whether each defendant had entered into a binding agreement, whether each defendant had breached that agreement, and whether plaintiffs were entitled to recover damages for that breach. There was no indication that the jury was confused by the instructions or the verdict form. The Court properly exercised its discretion in choosing the wording of the verdict form. The verdict form was sufficient; therefore defendants' argument does not support granting a new trial.

## c. Admission of Evidence

At trial, the jury heard recordings of numerous telephone calls, which had been recorded by RBC in its regular course of business. There were conversations between RBC employees and Rauch, RBC employees and Highland

26

employees, RBC employees and Fidelity employees, and among
RBC employees.  Prior to trial, defendants sought a ruling
excluding all taped conversations between Highland and RBC,
between Fidelity and RBC, and amongst RBC employees
(hereinafter referred to as the "non-Rauch recordings").
Defendants argued that whatever RBC personnel told a fellow
employee, Highland, or Fidelity was not relevant or
attributable to defendants.  The Court denied that motion,
without prejudice for renewal at trial.  However, the Court
stated that, generally, the non-Rauch recordings were
relevant under Federal Rule of Evidence 401.  At various
times during the trial when non-Rauch recordings were
played for the jury, the Court issued a limiting
instruction.

Defendants now argue that a new trial is warranted
because the Court committed substantial error in admitting
the non-Rauch recordings, which they assert were irrelevant
hearsay.  Defendants argue that the Court's in limine
ruling was erroneous, that the state of mind exception to
the hearsay rule did not apply here, and that the Court's
limiting instruction did not cure the prejudice that
defendants suffered.  In order to warrant a new trial, the
introduction of inadmissible evidence must have been a
clear abuse of discretion and so clearly prejudicial to the

outcome of the trial that the result was seriously

erroneous or a miscarriage of justice. See SR Int'l Bus.

Ins. Co., Ltd. v. World Trade Ctr. Props., LLC, 467 F.3d

107, 119 (2d Cir. 2006); Nimely v. City of New York, 414

F.3d 381, 399-400 (2d Cir. 2005); Perry v. Ethan Allen,

Inc., 115 F.3d 143, 150 (2d Cir. 1997).[5]

As the Court stated in its in limine decision and

numerous times at trial, the non-Rauch recordings were not

admissible for the truth of the matter asserted, but

rather, were admissible "only insofar as it may reflect on

the state of mind of either the speaker or the listener."

(Trial Tr. at 137:25-138:2.) Federal Rule of Evidence

803(3) states:

> Then existing mental, emotional, or physical
> condition. A statement of the declarant's then
> existing state of mind, emotion, sensation, or
> physical condition (such as intent, plan, motive,
> design, mental feeling, pain, and bodily health),
> but not including a statement of memory or belief
> to prove the fact remembered or believed unless
> it relates to the execution, revocation,
> identification, or terms of declarant's will.

---

[5] Defendants also assert that plaintiffs' counsels' use of the phrase
"material nonpublic information" forty-five times during the trial was
unfairly prejudicial to defendants. (Defs.' Memo. of Law at 61 n.21;
Defs.' Reply at 44.)  The Court refers to its in limine ruling, which
adequately addressed defendants' concerns about prejudice from being
unfairly portrayed as "bad people" by substantially limiting the
language that could be used. See Highland Capital Mgmt., 551 F. Supp.
2d at 191-93.  The Court properly allowed plaintiffs to use the phrase
"material nonpublic information" and defendants were not unfairly
prejudiced by plaintiffs' use of it.

Here, the non-Rauch recordings include statements "of the declarant's then existing state of mind," id., regarding the sale of defendants' Notes.  The recordings occurred while the negotiations were proceeding, thus capturing the speakers' state of mind during the relevant period.[6]

Additionally, the non-Rauch recordings were relevant. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401. Although the non-Rauch recordings were not direct evidence of whether defendants agreed to sell their Notes, (Defs.' Reply at 41), the recordings were relevant to plaintiffs' claims under the Rule 401 standard.  The recordings reflected the state of mind of the key personnel in the negotiations in the moments leading up to and following the transaction that gave rise to this action.

Under Federal Rule of Evidence 403, relevant evidence may be excluded where "its probative value is substantially outweighed by the danger of unfair prejudice."  Evidence is prejudicial under Rule 403 if it "involves 'some adverse

---

[6] Highland contends that the non-Rauch recordings are not hearsay because they are business records under Federal Rule of Evidence 803(6). (Highland Opp. at 37.)  As the Court stated at trial, however, even if the recordings could be considered business records, there still could be a hearsay-within-hearsay problem rendering them inadmissible.

effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" United States v. Gelzer, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980)). Such evidence will be excluded if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, advisory committee's notes. Here, the probative value of the non-Rauch recordings substantially outweighed any danger of unfair prejudice to defendants. The evidence was relevant and useful to the jury in understanding the circumstances of the transaction, as well as plaintiffs' state of mind at the time of the transaction. This is particularly so where the recordings were made at the time of the transaction and the trial did not occur until seven years later.

As previously noted, during the trial, the Court issued a limiting instruction to the jury regarding evidence admitted under the state of mind exception to the hearsay rule, stating that it may only be considered as evidence of the state of mind of the speaker or listener. In addition to repeating the instruction at appropriate times during the trial, the Court included the limiting instruction in its Jury Charge. During the testimony of

the first witness in which the issue arose, the Court

informed the jury that defendants' counsel "has a standing

objection with respect to the testimony of this witness,

and he may well renew it with respect to others." (Trial

Tr. at 137:16-18.)   There is a presumption that a jury

follows such limiting instructions. See United States v.

Downing, 297 F.3d 52, 59 (2d Cir. 2002) ("Absent evidence

to the contrary, we must presume that juries understand and

abide by a district court's limiting instructions.")

(citing Zafiro v. United States, 506 U.S. 534, 540-41,

(1993)).   The instruction cured any potential unfair

prejudice that defendants might have suffered.

### d. Holmes

Defendants sought to make reference to Judge

Cabranes's 1991 opinion in S.N. Phelps & Co. v. Prudential

Insurance Co., No. 91 Civ. 00451 (D. Conn. 1991), a case

which involved RBC's Max Holmes and his previous employer,

Prudential Insurance Co.   Defendants intended to ask

questions of Holmes regarding his involvement in and

understanding of that action, believing it had some bearing

on his intent in drafting the January 5, 2001 Letter

Agreement in this case.   The Court excluded any reference

to Phelps at trial.

Defendants now assert that the Court's exclusion of such evidence was in error and that a new trial is warranted. The Court, however, properly excluded evidence relating to Phelps. Judge Cabranes's Phelps decision was inadmissible hearsay. See Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc., 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001) ("Judicial findings in other cases proffered as evidence are generally characterized as inadmissable hearsay."); cf. Torah Soft Ltd. v. Drosnin, No. 00 Civ. 0676, 2003 WL 22024074, at *1-2 (S.D.N.Y. Aug. 28, 2003) (holding that where a prior judicial opinion in a related action may have preclusive effects, the opinion may be admissible evidence). Even if such evidence could fall under a hearsay exception, an opinion from another jurisdiction, in a case between different parties, from many years prior, and when the witness was with a different employer, was not relevant in this action under Federal Rule of Evidence 401. Furthermore, under the Federal Rule of Evidence 403 balancing test, any reference to Phelps would have been substantially more prejudicial than probative. The risk of unfair prejudice was high because the jury may have given undue weight to any reference by defendants to Phelps or Holmes's involvement in Phelps. Additionally, reference to Phelps in any way was likely to

cause juror confusion. The Court also notes that
defendants were granted the opportunity to cross-examine
Holmes and thereby challenge his credibility and inquire as
to his intent in drafting the Letter Agreement. Even if
the Court's ruling was error, it certainly was not
substantial error warranting a new trial. Accordingly, the
Court rejects defendants' argument that a new trial is
warranted on this basis.

### e. Guild

Guild testified as an expert witness for plaintiffs.
Defendants now assert that the Court's admission of Guild's
testimony on custom and practice in the securities industry
was material error. The Court ruled on the admissibility
of Guild's testimony in its January 31, 2008 decision on
the parties' numerous motions in limine. See Highland
Capital Mgmt., 551 F. Supp. 2d at 182-83. The Court held
that Guild was qualified to testify as an expert and
permitted him to testify on industry custom and practice,
finding it relevant to the case and potentially helpful to
the jury. The Court did place limits on Guild's testimony,
ruling that he could not testify regarding an individual's
state of mind or credibility, and that he could not testify
as to ultimate legal conclusions. Id.

The admission of industry custom and practice testimony in a securities action is not uncommon. See, e.g., United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991) ("Particularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts."); S.E.C. v. Lorin, 877 F. Supp. 192, 196 (S.D.N.Y. 1995), modified, 76 F.3d 458 (2d Cir. 1996); Marx & Co., Inc. v. Diners' Club, Inc., 550 F.2d 505, 511 (2d Cir. 1977), cert. denied, 434 U.S. 861 (1977). Although defendants' Notes were "unusual" and their sale was not like a typical public security trade, industry custom and practice has proven relevant to this case as it progressed through this Court, the Second Circuit, and the New York Court of Appeals. As in other cases involving securities, such testimony aided the jury in understanding the issues before them.

Guided by the Court's in limine decision, Guild limited his testimony and did not draw legal conclusions. Rather, he testified regarding factors indicating to him, as an expert, whether there was an oral agreement and whether Rauch was defendants' agent. See In re Blech Secs. Litig., No. 94 Civ. 7696, 2003 WL 1610775, at *22-23 (S.D.N.Y. Mar. 26, 2003) (Sweet, J.). Additionally, defendants' assertion that Guild's industry custom and

practice testimony should not have been permitted because defendants themselves were not members of the security industry is unfounded. The jury concluded that Rauch, a broker in the securities industry, was acting as defendants' agent in the sale of these securities. Defendants also were granted the opportunity to present their own expert witness on these same issues, with the same limitations. Finally, the Court instructed the jury regarding the role of expert testimony. (See, e.g., Trial Tr. at 610:9-612:23.)

## f. Actual and Apparent Authority

Defendants assert that the Court's instructions on actual and apparent authority were erroneous and warrant a new trial. Defendants contend that the Court erred by instructing the jury on actual authority, claiming that there was no evidence of it at trial. They also argue that the Court erred in including an instruction on implied actual authority, and that the erroneously included instruction was incomplete. Additionally, defendants claim that the Court's instructions on apparent authority were misstated and gave the jury a false impression of Rauch's authority. Finally, defendants argue that the Court failed to explain that the jury needed to find two levels of agency for the claims against Susan, Leslie, and Scott.

The Court's charge on actual and apparent authority was consistent with New York law and, as a whole, adequately instructed the jury on the law. Plaintiffs presented some evidence that Rauch possessed actual authority to bind defendants to a sale of their Notes; therefore, an instruction on actual authority was appropriate. See, e.g., Hilord Chem. Corp. v. Ricoh Elecs., Inc., 875 F.2d 32, 38 (2d Cir. 1989) ("All that is necessary is that there be some evidence supporting a party's theory of the case.") (citing Doyle v. Exxon Corp., 592 F.2d 44, 47 (2d Cir. 1979)). Further, the Court's instruction that "[i]f an agent has implied actual authority, the agent is authorized to act in a manner in which the act is ordinarily performed or which is inherent or incidental to the ordinary scope of authority associated with the agent's position, unless the principal informs the third party of a specific limitation on the agent's authority," (Jury Charge at 35), was an adequate statement of the law.

In addition, the Court's instruction on apparent authority was not erroneous. The Court properly exercised its discretion in denying defendants' request to include additional language regarding apparent authority in this particular case. The Court did not convey to the jury any

false impressions, as defendants' claim, but instead, allowed the jury to perform its fact-finding role.

Contrary to defendants' assertion, the Court did instruct the jury regarding whether Rauch was an agent for each defendant and whether Leonard was an agent for Leslie, Susan, or Scott. Indeed, the Court instructed the jury that they "should apply these [agency] principals to the facts of this case in determining whether or not Glen Rauch was an agent of the Schneiders with the authority to sell the notes at issue, or whether or not Leonard Schneider was an agent of his children with the authority to hire and direct Rauch to negotiate and sell on behalf of the Schneiders." (Jury Charge at 33.) This instruction, taken together with the rest of the charge, was not confusing or misleading.

In sum, the jury's findings were well supported by the evidence at trial, and the Court did not commit substantial errors warranting a new trial. The Court cannot say that the jury's verdict is against the weight of the evidence or that the jury reached a seriously erroneous result. Therefore, defendant's motion for a new trial is denied.

II. Amendment of the Judgment

All parties request that the Court amend the Judgment. Plaintiffs bring a joint motion to correct the judgment

pursuant to Rule 60(a) of the Federal Rules of Civil

Procedure and defendants bring a motion to alter or amend

the judgment pursuant to Rule 59(e) of the Federal Rules of

Civil Procedure.  For the following reasons, plaintiffs'

motion is granted and defendants' motion is denied.

A. Federal Rules of Civil Procedure 59(e) and 60(a)

Federal Rule of Civil Procedure 59(e) provides that

"[a] motion to alter or amend a judgment must be filed no

later than 10 days after the entry of the judgment."  A

motion to amend a judgment pursuant to Rule 59(e) properly

is granted where the movant demonstrates that the judgment

is based upon manifest errors of law or fact. See, e.g.,

Davidcraft Corp. v. Danu Int'l, Inc., No. 90 Civ. 6578,

1992 WL 247035, at *1 (S.D.N.Y. Sept. 15, 1992); Wallace v.

Brown, 485 F. Supp. 77, 79 (S.D.N.Y. 1979).

Federal Rule of Civil Procedure 60(a) provides that

"[t]he court may correct a clerical mistake or a mistake

arising from oversight or omission whenever one is found in

a judgment, order, or other part of the record.  The court

may do so on motion or on its own, with or without notice."

The "general purpose of Rule 60(a) 'is to afford courts a

means of modifying their judgments in order to ensure that

the record reflects the actual intentions of the court.'"

Slupinski v. First Unum Life Ins. Co., No. 99 Civ. 0616,

2006 WL 2266569, at *2 (S.D.N.Y. Aug. 7, 2006) (quoting Employers Mut. Casualty Co. v. Key Pharms., 886 F. Supp. 360, 363 (S.D.N.Y. 1995)). Thus, Rule 60(a) "permits the correction not only of clerical mistakes, but also of inadvertent errors arising from oversight or omission." In re Marc Rich & Co. A.G., 739 F.2d 834, 836 (2d Cir. 1984) (internal quotations omitted).

## B. Damages Awards

### 1. General Damages

The parties agree that the Judgment should be amended to reflect that defendants' liability for general damages should have been several, and not joint. (Pls.' Amend. Memo. of Law at 3; Defs.' Amend. Opp. at 3.) The parties also agree to the apportionment of general damages to each defendant based on the amount of his or her notes. (Defs.' Amend. Opp. at 10-11.) However, the parties disagree as to whether the amendment should be made pursuant to Rule 59(e) or Rule 60(a).

The Court holds that because an amendment of the general damages here involves correction of only "clerical mistakes" or "inadvertent errors," In re Marc Rich & Co. A.G., 739 F.2d at 836, and not "manifest errors of law or fact," Bowers v. Andrew Weir Shipping, Ltd., 817 F. Supp. 4, 5 (S.D.N.Y. 1993) (Leisure, J.), the Court shall amend

the Judgment pursuant to Rule 60(a). The amendment "is a type of mistake or omission mechanical in nature which is apparent on the record and which does not involve a legal decision or judgment by an attorney." Hegger v. Green, 91 F.R.D. 595, 597 (S.D.N.Y. 1981) (internal quotations omitted). Here, the intent of the Court was clear.[7] See Robert Lewis Rosen Assocs., Ltd. v. Webb, 473 F.3d 498, 503-04 (2d Cir. 2007). Accordingly, the Judgment shall be amended to indicate that defendants are severally liable for general damages in the following amounts. Highland is awarded damages of \$3,173,974.33 from Leonard, \$13,155,659.68 from Leslie, \$13,155,659.68 from Susan, and \$6,571,030.05 from Scott. RBC is awarded damages of \$19,411,278.21 from Leonard, \$368,828.32 from Leslie, \$368,828.32 from Susan, and \$199,414.16 from Scott.

## 2. Consequential Damages

The jury awarded \$5 million in consequential damages to RBC. With pre-judgment interest of \$3,027,945.20, defendants are jointly liable for \$8,027,945.20 in consequential damages to RBC under the Judgment. The parties dispute whether defendants should be jointly liable

---

[7] The jury's benefit of the bargain damages award was based on the face value of defendants' eight promissory notes less the amount plaintiffs would have paid for the notes, plus interim interest. (Pls.' Memo. of Law at 3-4.) The jury's award plainly was based on each defendant's breach with respect to his or her individual notes.

40

for the consequential damages. Defendants assert that, if the Court deems the Judgment correctable,[8] only Leonard should be liable for consequential damages because most or all of the consequential damages award was based on lost business from Fidelity.[9] (Defs.' Amend. Opp. at 12-13.) Defendants assert that "[t]he most reasonable way to amend the judgment would be to attribute the consequential damages to the source of what is very probably over 98% of them, by making only Leonard Schneider individually liable for those damages." (Defs.' Amend. Reply at 5.) RBC contends that defendants should be jointly liable for consequential damages because RBC put forth evidence of lost business profits from both Fidelity and Highland, and defendants have failed to show why the lost business damages should be attributed only to Leonard. (RBC's Amend. Reply at 3-4.)

The parties' dispute focuses on the question of whether the jury's award of consequential damages included lost business solely from Fidelity or from Highland as well. As defendants admit, "[i]t is impossible to answer

---

[8] Defendants' primary argument is that there is an insufficient basis for awarding consequential damages; however, in light of the Court's decision above denying defendants' motion for judgment as a matter of law, or in the alternative, for a new trial, the Court considers defendants' secondary argument here.

[9] Leonard's breach of his obligation to deliver his $23.6 million promissory note was the source of RBC's lost business damages from Fidelity. (Defs.' Amend. Opp. at 5.)

41

this question with certainty. . . ." (Defs.' Amend. Reply
at 4-5.) Defendants further acknowledge that "the jury's
consequential damages award cannot be parsed with
precision." (Id. at 5.) The jury did not adopt the
consequential damages figures set forth by RBC during the
trial.[10] Defendants have failed to demonstrate that the
jury's actual intentions were not reflected in the
Judgment. See Employers Mut. Casualty Co., 886 F. Supp. at
363. Thus, the Court finds no basis for disturbing the
consequential damages award in the Judgment.

### 3. Post-Judgment Interest

Under 28 U.S.C. § 1961(a), "interest shall be
calculated from the date of the entry of the judgment, at a
rate equal to the weekly average 1-year constant maturity
Treasury yield, as published by the Board of Governors of
the Federal Reserve System, for the calendar week preceding
the date of the judgment." The parties agree that post-
judgment interest should begin to run from March 11, 2008,
which was the date of entry of judgment. (Highland's Amend.
Reply at 4; Defs.' Amend. Opp. at 13-14.) Plaintiffs
assert, and defendants do not dispute, that the applicable
post-judgment interest rate should be 1.66%. (McNamara Aff.

---

[10] RBC sought $6,766,992.50 for consequential damages. They claimed
lost profits of $6,643.968.75 from business with Fidelity, and
$123,023.75 from business with Highland. (Defs.' Reply at 3.)

Ex. 11 (Federal Reserve Statistical Release, H.15(519) Selected Interest Rates (Mar. 10, 2008)).) Accordingly, the Judgment shall be amended to indicate that the post-judgment interest shall run from March 11, 2008 at a rate of 1.66%.

## CONCLUSION

For the reasons set forth above, defendants' motion for judgment as a matter of law, or in the alternative, for a new trial is hereby DENIED. Plaintiffs' joint motion to correct the judgment is hereby GRANTED, and defendants' motion to alter or amend the judgment is hereby DENIED.

**SO ORDERED.**

New York, New York
August **20**, 2008

_____
U.S.D.J.